ELIFF FERRIS, Respondent, *v.* JOHN VAN VECHTEN, as Surviving Executor, etc., et al., Appellants.

*It seems* that trust funds, which have been misappropriated by the trustee, may be followed into lands to the purchase of which they have been applied, and the *cestui que trust* may elect either to hold the unfaithful trustee personally responsible, to claim the lands, the fruits of the misappropriation, or to cause the lands to be sold for his indemnity, and hold the trustee for any deficiency.

To follow the money into lands, however, and to impress them with the trust, at least as against innocent third persons, the money must be distinctly traced and clearly proved to have been invested in the lands. It does not suffice to show possession of the trust funds by the trustee, and the purchase by him of, and payment for lands. No presumption arises from the payment alone that it was made with the trust funds.

Where trust money has been mingled with other moneys of the trustee so as to be indistinguishable, and the trustee has made investments generally with the moneys in his possession, the *cestui que trust* cannot claim a specific lien upon the property or funds constituting the investments.

The will of E. empowered her executors to sell sufficient of her real estate to pay her debts. Her real estate, subject to the power, she devised to her executors, during two lives, upon certain trusts. In an action brought by a creditor the complaint alleged, in substance, that moneys realized from real estate sold under the power of sale, and held by the surviving executor in trust for plaintiff, had been misapplied by him; that upon the final accounting of said executor it appeared, by his accounts filed with the surrogate, that large sales were made of real estate, and that large amounts of moneys arising therefrom were used and applied in keeping in repair the testator's homestead farm, and in paying interest and taxes thereon; that the executor credited himself with said payments, but the same were disallowed by the surrogate, who decreed that said executor pay plaintiff's claim; that execution was issued thereon and returned unsatisfied, and that the executor was insolvent. The complaint asked that the amount of plaintiff's claim be decreed to be a charge and lien upon the farm, and for a sale thereof. Upon the trial the only proof as to the misapplication of the moneys realized from sales, and held for creditors, was the proceedings before, and the decree of the surrogate. *Held,* that the evidence failed to show the application of such moneys to relieve the lands held in trust, and did not justify the granting of the relief asked; that if the proceedings before the surrogate were competent for any purpose, as against those interested in the trust estate, they were only so in respect to matters then in issue, and which were determined by the surrogate; and that in no aspect of the case was the surrogate called upon to trace and identify the moneys received by the executor for the lands sold.

As to whether, by treating the complaint as a creditor's bill, upon proof that the executor had made the payments alleged under circumstances which would give him a lien as a trustee upon the trust estate, the lien could be inforced for the benefit of plaintiff, *quære.*

(Argued February 22, 1878; decided March 26, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 9 Hun, 12.)

The complaint in this action alleged in substance that plaintiff, during the life-time of Eliza Elmendorf, commenced an action against her which was pending at her death. That she died in 1858, leaving a will by which defendant Van Vechten and one Brodhead were appointed executors; that by the will a power of sale was given to the executors to sell sufficient of her real estate to pay her debts, reserving, if possible, the homestead farm; all of her real estate was devised to said executors in trust to receive the rents and profits and apply them for purposes specified, during the lives of two persons named, and upon their death the same to go to the grandchildren of the testator; that plaintiff's action was continued after the testator's death against said executors, and plaintiff recovered a judgment for $1,931.94; that sales of real estate were made by the executors under the power contained in the will more than sufficient to pay all of the testator's debts; that upon the final accounting of defendant Van Vechten, as executor, he filed an account by which it appeared that large sales of real estate were made by the executors and large sums realized therefrom, which were used and applied in keeping in repair the homestead farm mentioned in the will, and for principal and interest on a mortgage, and for taxes on said farm, amounting in all to $6,548.93, which said sum Van Vechten credited himself with; that the surrogate disallowed these credits as against creditors and adjudged and decreed that

there remained in the hands of the executors the sum of $5,523.02 properly applicable, among other things, to the payment of plaintiff's judgment, and directing payment of the same. That execution was issued upon said judgment and returned unsatisfied, and that said Van Vechten was insolvent; that pending the proceedings before the surrogate said Brodhead died, and the proceedings thereafter were continued in the name of Van Vechten; the other defendants were the *cestuis que trust* and the remaindermen.

Plaintiff asked that the amount of her judgment, with costs, etc., be adjudged to be a lien and charge upon the homestead farm, and for judgment charging the same thereon and directing sale thereof.

Upon the trial the record of the proceedings before and of the judgment of the surrogate were offered in evidence on behalf of plaintiff, it was objected to by defendant's counsel as incompetent and immaterial. The objection was overruled and said counsel duly excepted. The court found the facts substantially as alleged in the complaint. Also that of the $5,123.07 received by the executors, they had expended for repairs, taxes and interest on the homestead farm the sum of $1,784.47, and within ten years they had expended $3,258.23.

As conclusion of law the court found as follows:

" That the application of the proceeds of the real estate sold by the executors to the payment of taxes and repairs upon said homestead farm, and of the principal and interest upon the said mortgage, was in violation of the rights of the plaintiff as a creditor; and that said proceeds were the primary fund out of which the executors should have paid the plaintiff; that her lien thereon is superior to any right of the defendants Elmendorf or either of them to retain the same; that to the extent necessary to pay the debt due the plaintiff, together with the costs awarded to his counsel by the surrogate's court and the General Term of this court, the plaintiff has the right to resort to the said homestead farm, and have the same, or so much thereof as may be necessary

sold, and out of the proceeds of such sale to be paid, with the costs and expenses of said sale."

Judgment was accordingly directed and entered declaring the items specified to be a lien and charge upon the said farm and directing sale thereof, or so much as should be necessary, as in case of foreclosure. Further facts appear in the opinion.

*Charles A. Fowler*, for appellants. The power of sale in the will does not work an equitable conversion of the real estate. (*Allen* v. *De Witt*, 3 N. Y., 284; *Stagg* v. *Jackson*, 1 id., 212; *Phelps Ex'r* v. *Pond*, 23 id., 69, 76.) The excess of the proceeds of the lands sold over the debts of the testatrix was not assets in the hands of the executors, but retained the character and attributes of land and would go to the heir or devisee. (*Bogert* v. *Hertell*, 4 Hill, 501, 502, 509; *Allen* v. *De Witt*, 3 N. Y., 279; *Selden* v. *Vermilyea*, id., 525; *Cruger* v. *Jones*, 18 Barb., 467; *Warren* v. *Paff*, 4 Bradf., 260.) Plaintiff's right of action was barred by the six years statute of limitation as against the heir. (*Sanford* v. *Sanford*, 62 N. Y., 553; *Martin* v. *Gage*, 5 Seld., 398; *Borst* v. *Corey*, 15 N. Y., 505; *Ferguson* v. *Borst*, 1 Bradf., 10, 18.) If it was not barred by the six years statute it was by the ten years. (*Van Vechten* v. *Keator*, 63 N. Y., 55; *Hubbell* v. *Medbury*, 53 id., 98; *Warren* v. *Paff*, 4 Bradf., 260; *Bucklin* v. *Bucklin*, 1 Abb. Ct. App. Dec., 242, 245.) Plaintiff, to establish her title to the interposition of the court, must establish a lien or *quasi* lien upon the property. (*Chaut. Co. B'k* v. *White*, 2 Seld., 236, 252; *Kent* v. *Kent*, 62 N. Y., 566; *Sharpe* v. *Freeman*, 45 id., 802; 63 id., 52; *Fulton* v. *Whitney*, 66 id., 557.) An executor, in the absence of some provision in the will making him such, is never a trustee for creditors as to the realty. (Perry on Trusts [1st ed.], § 559; *Tucker* v. *Tucker*, 1 Seld., 408; *Conkling* v. *Egerton*, 21 Wend., 436.) The payments complained of having been made for the benefit of the estate of Sarah, that would be the fund liable

therefor, but that estate is inalienable. (4 Kent, 75; Girard's Titles, 53; 1 Story's Eq., § 488; *Sheldon* v. *Ferris,* 45 Barb., 124; *Stilwell* v. *Dougherty,* 2 Bradf., 311; *Cairns* v. *Chabert,* 3 Edw. Ch., 312; *House* v. *House,* 10 Paige, 158; *Van Epps* v. *Van Epps,* 9 id., 237; *Mosely* v. *Marshall,* 22 N. Y., 200; *Noyes* v. *Blakeman,* 2 Seld., 567 ; *Cruger* v. *Jones,* 18 Barb., 468.) The power and direction in the will to convey to the defendants Julia and Nellie L., on the death of their mother, did not constitute a trust, but a power in trust merely. (*Bruner* v. *Meigs,* 64 N. Y., 507–516; *Manice* v. *Manice,* 43 id., 303; *Skinner* v. *Quinn,* 43 id., 99; *Belmont* v. *O'Brien,* 2 Kern., 394–404; *Briggs* v. *Davis,* 20 N. Y., 22.) Neither the trustee nor *cestui que trust* for life could incumber or destroy that estate. (*Bennett* v. *Garlock,* 17 Sup. C. R., 342; *Bloomer* v. *Waldron,* 3 Hill, 366; *Alb. F. Ins. Co.* v. *Bay,* 4 N. Y., 9; *Dunning* v. *Ocean Nat. Bk.,* 61 id., 497–502; *Loder* v. *Hatfield,* 4 Hun, 36–42.)

*J. Newton Fiero,* for respondent. As trustee for the creditors, the surviving executor was bound to sell and apply the property of his testator to pay the debts of Eliza Elmendorf, and such sale and application can be inforced in equity. (1 Story's Eq., § 532; *Sheperd* v. *McEvers,* 4 J. Ch., 136; *Cumberland* v. *Codrington,* 3 id., 229, 261; *Nelson* v. *Blight,* 1 J. Cas., 205 ; *Weston* v. *Barker,* 12 J. R., 276; *Smith* v. *Wyckoff,* 11 Paige, 49, 51; *Rogers* v. *Rogers,* 1 id., 188; 7 Cranch, 71.) The land being the primary fund for the payment of the debts, the rights of defendant Elmendorf are subject to plaintiff's rights as a creditor. (*Van Vechten* v. *Keator,* 63 N. Y., 53.) Plaintiff's claim was not barred by the statute of limitations. (*Decouche* v. *Savetier,* 3 J. Ch., 190, 218; *Norton* v. *Turvill,* 2 P. Wms., 145; *Kane* v. *Bloodgood,* 5 J. Ch. 90, 116, 123, 124; *Coster* v. *Murray,* 7 id., 531; *Carroll* v. *Carroll,* 11 Barb., 294, 296; *Purdy* v. *Sistare,* 2 How. Pr., 126; 1 T. & B. on Trusts, 718; *Oliver* v. *Piatt,* 3 How. [U. S.], 411; Hill on Trustees, 263.) The executor having mis-

applied the money realized from sale of the trust property, which was more than enough to pay plaintiff, the latter may follow the money so misapplied into the land relieved from interest and taxes by the illegal act. (*Moses* v. *Murgatroyd*, 1 J. Ch., 119; *Hutchinson* v. *Reed*, Hoff. Ch., 316; 2. Story Eq., 532, § 1258 [see §§ 1258 to 1265] ; *Taylor* v. *Plummer*, 3 Maule & Selwyn, 574; 1 Story on Eq., 440, §§ 423, 532; *Adair* v. *Shaw*, 1 Sch. & Lef., 261; *Wood* v. *Tullis*, 18 Wall., 332 ; *Kerr* v. *Blodgett*, 25 How., 303 ; *Leitch* v. *Willis*, 48 Barb., 637; *McLeish* v. *First Nat. Bk.*, 42 Miss., 99; *Smith* v. *Bowen*, 35 N. Y. R., 83; *Williams* v. *Munroe*, 61 N. C., 164; *Sheperd* v. *McEvers*, 4 J. Ch., 137; *Barry* v. *Bruce*, 8 How., 399; Tiffany & Bullard on Trustees, 480; *Dodge* v. *Manning*, 1 Comst., 298; *Oliver* v. *Piatt*, 3 How. [U. S.], 401.) The defendants Nellie and Julia Elmendorf occupy no other or different position toward this fund, and have no other or higher rights in respect to the premises than has the defendant Sarah E. Elmendorf. (*Wood* v. *Wood*, 26 Barb., 356.)

ALLEN, J. This is, I think, a case of the first impression, but it is sought to be brought within the principle of equity by which, at the instance of a *cestui que trust*, trust funds which have been misappropriated by the trustee may be followed and reclaimed, so long as they can be traced and identified, and any property or choses in action into which they have been converted impressed with the same trusts as those upon which the original funds were held.

The claim of the plaintiff briefly stated is, that moneys realized from real estate sold under a power of sale for the payment of debts, and held by Van Vechten, the surviving executor, in trust for the plaintiff, a creditor, have been wrongfully and in violation of the trust applied to the payment of charges and incumbrances upon the lands of the testator described in the complaint, and which were devised to the executors in trust, to receive the rents, issues and profits thereof, and pay the same to the wife of a son of the testa-

tor, to be applied by her to the support of the family of such son, and upon her death to convey the same to the children of said son. The relief demanded by the plaintiff is in substance, although not so stated, that she be subrogated to the rights of the creditors and lienors, whose incumbrances have been *pro tanto* discharged as against the lands to the amount paid thereon from the trust funds. The funds can hardly be said to have been invested in the lands, or in the mortgages, or other charges paid by the executor. There was no purchase of either, but the incumbrances were partially satisfied. The lands were relieved from certain charges by the diversion to that purpose of funds held in trust for creditors, as alleged, and it is sought to revive the liens by subrogating the plaintiff to the rights of the original creditors. Whether a *cestui que trust* can be subrogated to the claims of creditors, to the payment of whose debts the trust fund has been misapplied, need not be determined. (See *Winder* v. *Diffenderffer*, 2 Bland Ch., 198.)

Regarding the payments by Van Vechten as investments in the lands, in relief of which they were made, the primary question is whether in that view a case was made upon the evidence for the relief demanded. It must be conceded that trust moneys may be followed into lands to the purchase of which they have been applied, and the *cestui que trust* may elect whether to hold the unfaithful trustee personally responsible, or claim the lands, the fruits of the misappropriation of the funds, or cause the lands to be sold for his indemnity, and look to the trustee for any deficiency. (*Lane* v. *Dighton*, 1 Ambler, 409, *per* Lord Ellenborough; *Taylor* v. *Plumer*, 3 M. & S., 562; *Thornton* v. *Stokill*, 19 Jur., 751; *Oliver* v. *Piatt*, 3 How. [U. S.], 333, *per* Story, J.; Story Eq. Jur., §§ 1258 *et seq.*; *Sheperd* v. *McEvers*, 4 J. C. R., 136; *Dodge* v. *Manning*, 1 Comst., 298.)

To follow money into lands, and impress the latter with the trust, the money must be distinctly traced and clearly proved to have been invested in the lands. While money, as such, has no ear-mark by which, when once mingled in

mass, it can be traced, it is, nevertheless, capable under some circumstances of being followed to, and identified with, the property into which it has been converted; but the conversion of the trust money specifically, as distinguished from other money of the trustee into the property sought to be subjected to the trust, must be clearly shown. It does not suffice to show the possession of the trust funds by the trustee, and the purchase by him of property — that is, payment for property generally by the trustee does not authorize the presumption that the purchase was made with trust funds. The product of, or substitute for, the original trust fund follows the nature of the fund as long as it can be ascertained to be such; and if a trustee purchase lands with trust money, a court of equity will charge them with a resulting trust for the person beneficially interested. But it must be clear that the lands have been paid for out of the trust money. This is illustrated by *Perry* v. *Phelips* (4 Vesey, 108). There a trustee for the purchase of land died without personal assets, but having purchased lands, the estates purchased were held not liable to the trust, the circumstances affording no presumption that they were purchased in execution of the trust.

If the purchase of land with the trust moneys could not be presumed when such purchase would be in execution of the trust, *a fortiori* it should not be presumed when it would be a violation of the trust. The right of following the trust property, in the new form which has been given to it, or in the property substituted for it, ceases only when the means of ascertainment fail, " which, of course, is the case when the subject-matter is turned into money and mixed and confounded in a general mass of property of the same description." (2 Story's Eq. Jur., § 1259, and note 4.) When the purchase-money, paid by a trustee for lands purchased, corresponds very nearly with that of the trust fund to be invested, that, with other circumstances, as the coincidence of the time of the receipt and disbursement, may suffice to show that the property was actually purchased with trust

funds. (*Lowden* v. *Lowden*, 2 Bro. Ch. C., 583; *Price* v. *Blakemore*, 6 Beav., 507.) The money paid by the trustee for lands or other property, or for choses in action sought to be subjected to the original trust, must be identified as trust moneys; and this is clearly recognized in all the cases, and in very many of them this has been the difficult question of fact upon which they have hinged, and the principle to be deduced from them is, that when the trust fund has consisted of money, and been mingled with other moneys of the trustee in one mass, undivided and indistinguishable, and the trustee has made investments generally from moneys in his possession, the *cestui que trust* cannot claim a specific lien upon the property or funds constituting the investments. (Hill on Trustees, m. p. 522.) This is consistent with the cases cited and relied upon by the counsel for the plaintiff, and the doctrine is recognized and applied in each case, and as the facts were proved to exist in them respectively. In *Moses* v. *Murgatroyd* (1 J. Ch. R., 119), the property held in trust was readily and certainly traced. In *Kip* v. *Bank of New York* (10 J. R., 63), the money, the subject-matter of the trust, was kept separate and distinct, and deposited as such. The court say the only check to the operation of the rule now under consideration is when the property is converted into cash, and has been absorbed in the general mass of the estate so that it cannot be followed or distinguished. It is the difficulty of tracing the trust money, which has no ear-mark, that prevents the application of the rule. (See, also, *Hutchinson* v. *Reed*, Hoff. Ch. R., 316, and cases by Asst. V. Ch., 2 Kent's Com., 623, 624; *Trecothick* v. *Austin*, 4 Mason, 29.)

There can be no presumption as against the defendants whose property is sought to be affected by the trust, which attached to the moneys realized by Van Vechten from the sale of lands under the power. So far as appears they are innocent of all wrong-doing, and have not colluded or combined with the executors to violate the trust, and it is not found that they assented to or had any knowledge of

any misappropriation of the fund, and if made trustees in virtue of their ownership of the lands they are made so, not by reason of any act of theirs, but as the legal result of the fact that trust moneys have been misapplied by a trustee of the fund to relieve of a burden their lands, held in trust for another purpose by the same trustee. The fact should be clearly, at least satisfactorily proved. This principal fact, upon which the right of the plaintiff to any relief in this action depends, is only alleged argumentatively in the complaint by the statement that it appeared in the account of the executors filed with the surrogate ; that large ' sales of real estate of the testator had been made by the executors, on account of which they had realized large sums of money, and that it also appeared that large amounts of money arising therefrom were issued and applied in keeping the homestead farm in repair, and large sums were paid out for interest and taxes on said farm. There was no proof that one dollar of the moneys received for lands, and which constituted the trust fund, was paid or applied to any of the purposes mentioned, nor is the fact of such misappropriation of the trust moneys found, nor was any fact proved or found from which such diversion and misappropriation of specific trust moneys can be legitimately inferred. The only proof given upon this branch of the case consisted of the proceedings before, and the decree of, the surrogate upon the settlement of the accounts of the executor. If these proceedings were competent evidence for any purpose, or to establish any fact as against the defendants, the present appellants, they were only competent in respect of the matters then in issue, and which were determined by the surrogate. The questions before that tribunal related solely to the accounts of the executors, and their liability to the creditors, and those entitled under the will of the testator. The executors were charged with the amount of the inventory of the personal estate of the deceased, together with the amounts received upon the sale of real estate. The moneys realized from the sale of lands were the primary fund for the payment of debts,

and creditors had the first claim to be paid from those moneys, and the first liability of the executors in respect of such moneys was to creditors. Such liability was discharged by proof of payment to creditors, whether made from the identical moneys received by the executors, or from other moneys of their own, or subject to their control. The moneys realized from lands sold in excess of the debts of the testator belonged to the present appellants, as devisees of the land subject to the power of sale, and the liability of the executors to them was discharged by like proof of payment to them or for their use, from any moneys of the executors, whether received for lands sold under the power or from other sources.

Upon proof of the plaintiff's debt, she was of course entitled to a decree for its payment on the admission by the executors in their filed account of the moneys received by them properly applicable to its payment. Proof of payment to or for the use of the devisees of the lands was no discharge of the liability to the plaintiff, and the fact that payments to or for the devisees were set up in discharge of the plaintiff's claim was wholly unimportant. It was unimportant upon that accounting whether Van Vechten, the surviving executor, had the money in his own pocket, or had disposed of it to some third person. His liability to the plaintiff upon that accounting was the same, and the decree was necessarily the same in either event. In no aspect of the case was the surrogate called upon to trace and identify the money received by the accounting executor on the sale of lands. The charges against the executors consisted of the gross receipts, and the discharges of the gross amount of the several payments and disbursements as allowed by the surrogate, and the decree was for the payment of a gross amount, and was a general judgment against a surviving executor for a general balance due, not for a surrender or paying over of specific moneys or securities, and as between the plaintiff, a creditor, and the appellant's devisees it was adjudged that payment claimed to have been made by the executor to or for the latter did not dis-

charge the obligation to the former, and such payments were merely disallowed as credits claimed by the executor. It was not found upon the trial of the present action by the court, as a fact, that the specific moneys received by the executors for lands sold, and which were trust moneys for the payment of debts, were in any way paid to or applied for the use of the devisees in payment of the incumbrances upon the homestead farm, although the general forms of expression, to a limited extent, seem to imply the fact. The learned judge did not intend so to find, and does not seem to have regarded it as important. He merely speaks of the moneys which the executor used as, or in place of, the trust moneys and in discharge of his obligation, as trust moneys; but that does not make them the specific trust funds received. It is found, in general terms, that moneys to an amount stated were received from the sale of real estate under the power, and that the executors had paid various sums for principal and interest upon mortgages upon and repairs of the farm to the amount in the aggregate stated, but the times and amounts of the various receipts, or of the several payments, are not found, nor is it found that the payments were made from the moneys received, or that the moneys were misapplied to these payments. If reference is had to the accounts and schedules filed by the executors, with the surrogate as the basis of the accounting, which is the only evidence of the dates and amounts of the several receipts and disbursements, there is nothing by which the moneys received for lands sold can be traced and identified as the moneys paid for the improvement of the homestead farm, or in discharge of incumbrances upon it. There is neither coincidence in the times or amount of the receipts and the disbursements of moneys upon the account, and for the purposes mentioned, to connect the one with the other and lead to a presumption that the money received from the one source was the same money that was paid out. The inference would rather be that the moneys, when received, were mingled with other moneys of the executors and used as

occasion required, either for purposes ·connected with the administration of the estate or the individual purposes of the executor. Whatever presumptions might be indulged in favor of the equities of the plaintiff as a creditor against the defaulting trustee or his representatives, were he or they the holders and claimants of the property sought to be realized, none can be indulged as against the present appellants who are innocent of any participation in the wrongful acts of the executor. If, upon the statement of the accounts by and before the surrogate, the evidence in this case and the findings of fact by the judge, the principle contended for by the plaintiff could be so far extended as to authorize a lien upon the lands in aid and relief of which payments were made by the executor for the benefit of the plaintiff as a *cestui que trust*, there would be no difficulty in giving every *cestui que trust*, as creditor having a debt of a fiduciary character, a preference in respect to the general assets and creditors at large of the trustee or debtor, a lien upon property which the trustée or debtor might have purchased during the existence of the trust or other fiduciary relations. This might be convenient and in furtherance of a general equity in favor of one class of creditors, but would be an unauthorized extension of the equitable doctrine invoked by the plaintiff, which demands for its application that the trust fund or money shall be traced and identified as existing in the new form into which it has been converted. In no other way can the equitable title of a *cestui que trust* to specific property be established.

This question, which is decisive of this appeal, is fairly raised by the exception to the admission, as evidence generally in the case, of the proceedings before the surrogate over the objection of the appellants that they were immaterial and incompetent, and also by the exceptions to the conclusions of law and the judgment of the court upon the trial. It is proper to say that in passing only upon this one question we do not intend to intimate an opinion upon any of the other questions made and ably argued by the learned

counsel for the respective parties. The case bristles with interesting and difficult questions, but as the one considered is decisive of this appeal, and the other questions may not reappear or be obviated by evidence upon another trial, we do not deem it necessary to consider them. Upon another trial it may be shown by competent evidence that the moneys received upon the sale of lands were kept separate from all other moneys, and specifically applied to the payment of the charges and incumbrances upon the homestead farm, and if so the difficulty which the plaintiff now encounters will be obviated. The equities are clearly with the plaintiff, but they cannot override the legal rules of evidence, or be inforced by an unauthorized enlargement and extension of the equitable doctrine which lies at the foundation of the action. There is in truth no competent proof as against the appellants other than Van Vechten, that the payments claimed to have been made by him, in relief of the homestead, were ever made. The proof consists of the accounts unverified filed with the surrogate by the executors, in which they credit themselves with these payments, and the decree of the surrogate disallowing them, and adjudging an amount stated to be due the estate from the said executors, and in their hands properly applicable to the payment of the plaintiff's claim, which was less than one-half in amount of the sum decreed to be in the hands of the executors. The surrogate merely held and decided that if the payments had been made as claimed, they could not be allowed to the executors upon that accounting. This is the extent of the decree.

It is possible, although we do not intend to intimate an opinion upon the subject, for the reason that parties have not been heard, and the question is not before us that the plaintiff may have relief in the present action without tracing and identifying the trust moneys as now being invested in the homestead farm, and by treating this complaint as a creditor's bill, filed upon the return of an execution against Van Vechten unsatisfied. Upon proof that Van Vechten had made the payments alleged, under circumstances which

would give him as a trustee a lien upon the trust estate for the benefit of which they were made, it may be that the court would deem it a proper case to enforce the lien for the benefit of the plaintiff—that is, apply a debt due the judgment-debtor to the satisfaction of the judgment. Such a claim in favor of a judgment-debtor would not be beyond the reach of a creditor's bill.

As Van Vechten's account as trustee of the homestead farm has not been settled, there would arise none of the questions made upon the last trial as to the effect of the statute of limitations as affecting the claim of the plaintiff, upon the theory upon which the case was tried. But without considering this suggestion farther, the jugment must, for reasons stated, be reversed, and a new trial had.

All concur.

Judgment reversed.