Nott, C. J.
On the final accounting herein, a controversy has arisen as to the rights of certain claimants to the avails of certain negotiable bonds-and stock that were in the hands of the assignor, before the assignment, and sold afterwards; all the parties in interest have signed a full statement of the facts, submitting their rights to the determination of the court.
John F. Smyth, on the 9th day of May, 1884, executed a general assignment for the benefit of his creditors, to John 0. Connor. He was engaged, at that time, in business in Albany, as a stock-broker, being a member and having a seat in the Mew York Stock Exchange. By the rules of the exchange, when a member assigns, all securities held by other members of said exchange for indebtedness to them of the member fail *433 ing, may be sold at once and without notice, and all members have a lien upon the seat or membership in said exchange of any member indebted to them, for the amount of such indebtedness. Smyth’s Hew York correspondents were Hotchkiss, Burnham & Co., stock-brokers, who were members of said exchange. Hotchkiss, Burnham & Co., were to purchase, pay for and carry for said Smyth and sell on his order, such stock as Smyth directed, he to keep on deposit with them, a margin in cash or securities of ten per cent, of the par value of the stock purchased.v The accounts between Hotchkiss, Burnham & Co. and Smyth, charged him with the amount paid by them for stock, and credited him with proceeds of sales and margins paid in cash or securities deposited. Hotchkiss, Burnham & Co. knew no party in any transaction except Smyth. The certificate or scrip of stock remained with Hotchkiss, Burnham & Co., and if any dividend was declared thereon, the same was received by Hotchkiss, Burnham & Co., and credited to Smyth in his account, and he in turn credited his customers. If any of Smyth’s customers desired the scrip, he was entitled to it on payment of its full price.
When Smyth’s assignment was announced, Hotchkiss, Burn-ham & Co. sold all the stock and securities held by them on Smyth’s account, and after crediting them with the avails thereof, he still owed them $14,148.32. Subsequently, Smyth’s assignee sold Smyth’s seat in the stock exchange, for 'the sum of $23,500. Out of this sum, Hotchkiss, Burnham & Co. were paid the balance due them, the residue was retained by the assignee. Does this residue go to the creditors, or is it impressed with superior claims of others ? To determine this a statement of the position of the claimants must be made.
George W. Knowlton bought stock of Smyth, at various times, but closed his account, paying on March "7, 1884, a balance due Smyth of $565.33. Instead of depositing with Smyth the usual margin, Knowlton left with Smyth a negotiable bond, par value, of $1,000. Smyth sent this bond, without notice to Knowlton, to Hotchkiss, Burnham & Co., and he *434 was credited with this amount by them. Shortly after, March seventh, Knowlton requested Smyth to sell the bond at a price not less than 115J; after Smyth’s assignment, Knowlton had an interview with the assignee and asked where said bond could be found. Being told where it was, Knowlton demanded its return to him from Hotchkiss, Burnham & Co., who, however, sold it for $1,100, giving credit to Smyth for the amount thereof.
William P. Budd had dealings with Smyth, and in a stock transaction, Budd became entitled to give scrip negotiable bonds, which were held by Smyth for sale, as Budd might direct. These bonds were delivered by Smyth to Hotchkiss, Burnham & Go., who sold them after the assignment, crediting the avails thereof to Smyth’s account with them.
William C. McHarg, John G-. Campbell, Joseph D. Craig, John C. Connor and James Middleton, had severally dealt with Smyth, buying stocks on margin, and claim that their stock having been sold after the assignment by Hotchkiss, Burnham & Co., they each have a claim for the amount that should have come to them out of the transaction if Smyth had continued in business and fulfilling his business engagements.
From the foregoing statement, it appears that Hotchkiss, Burnham & Co. had a lien upon and the right of sale of two distinct classes of securities; one of which belonged to Smyth himself, his seat in the exchange, the other was the securities held for margin, among which were those above stated. They sold the latter, thus freeing to a considerable extent, their lien upon the seat in the exchange.
The bonds of Knowlton and Budd continued to be their property, Smyth was a mere bailee for hire; he had no charge against them or lien of any kind at the time of his failure, and if the bonds were in the actual custody of the assignee, trover or replevin would lie therefor. And so as to the stock of McHarg and others, the title to which passed to them as against Smyth, and the relation of pledgor and pledgee was created and existed (Markham agt. Jaudon, 41 N. Y., 236 , *435 Bates agt. Drake, 53 N. Y., 211), and upon payment of the amount due beyond the margin, the pledgor would be entitled to the possession of the stock (Wheeler agt. Newbould, 16 N. Y., 398; Wilson agt. Little, 2 N. Y., 448). This would have been the legal position of the several parties, had not the property been hypothecated to Hotchkiss, Burnham, & Co. Do the sales therefor made by Hotchkiss, Burnham, & Co., extinguish the rights of these parties, or can they now be accorded any better position than the general creditors ? It would be very unreasonable to hold that the sales did extinguish those rights, and to deny to these claimants any relief. Nothing passed by the assignment, except the property of the assignor, and if any property was freighted with equities the assignee should recognize the same (Dos Passos on Stock Brokers and Stock Exchanges, 162, 163).
In Haggerty agt. Duane (1 Paige Ch., 231), an assignee for benefit of creditors sold property, title to which was contracted for, but had not passed and remained in the assignor’s vendor. Chancellor Walwobth directed the money arising from that sale to be paid into court by the assignee until the question of title was settled. In Kip agt. Bank of New York (10 Johns., 63), it was held that under the assignment of an insolvent, no other estate vests in the assignee than that of which the insolvent had the legal or equitable title, and that property held in trust by the assignor did not pass, and if sold by the assignee, the proceeds might be traced for the benefit of the cestui que trust. The difficulty of tracing the fund suggested by the court in that case is admirably explained in the rules given in the note to Hooley agt. Gieve (9 Abb. N. C., 41), as follows: “ 1. Where trust moneys have lost their individuality, by being commingled with other moneys or turned into other property, equity may establish a charge on the entire fund in favor of the cestui que trust to the extent to which that can be done without injustice to those having other equities in the fund. 2. In doing this, it may trace the moneys by all the means that book-keeping and an equitable *436 application of payments afford, so as to fasten on the resulting , fund a charge or lien for the amount divested so far as the fund can .justly he subjected to the trust,- but no further” (p. 41). If the bonds and stock had been sold by Smyth prior ■ to the assignment and the proceeds mingled'with his other funds, the case of Illinois Trust and Savings Bank agt. First National Bank (15 Federal Rep., 858), would apply. The general rule that funds wrongfully appropriated may be followed into other hands and reach the property into which it has been invested is well established (Pleasant Valley agt. Calvin, 13 N. W. Rep., 80; Bank agt. Simonton, 14 Rep., 315; Southpark Comn. agt. Kerr, 13 Federal Rep., 502; Ferris agt. Van Vechten, 73 N. Y., 113).
The rights and interests of Hotchkiss, Burnham & Co. could have been fully protected by the sale of the seat in the exchange, and it cannot be that the rights of the claimants here can depend upon the notion of the Hew.York brokers in choosing to sell their negotiable collaterals rather than the property which was impressed with no equity, but was common to all the creditors of the assignor. The law will not permit Hotchkiss, Burnham & Co. to act as an arbiter and make such an appropriation of securities as suit them ( Waller agt. Lacy, 1 Man. & Gr., 54).
It is true that the proceeds of the bonds and stocks in question never came into the hands of the assignee, as they had been used to extinguish a debt of the assignor, which was secured as well by a property to which the general creditors of the insolvent had an' unquestioned right. It is indisputable, therefore, that the funds in the hands of the assignee have been increased at the expense of the claimants, and, under those circumstances, I think the rights of the claimants are impressed upon the funds so received by the assignee (Alston agt. Holland, 4 Chy. App. Cases, 168; Taylor agt. Plumer, 3 Maule & Selwyn, 562; Broadbent agt. Barlow, 3 De Gex, Fisher & Jones, 570). And we have the high authority of lord Ellenbobotoh, who says: “And, indeed, upon a view of the authorities, it should *437 seem that if the property in the original state and form was covered with a trust in favor of the principal, no change of that state or form can divest it of such trust, or give the factor, or those who represent him in right, any other more valid claim, in respect to it, than they respectively had before such change. The difficulty of tracing property, which arises in such a case, is a difficulty of fact and not of law.”
Under the heading of “ marshaling of securities,” Mr. justice Stoby says: “ The general principle is that if one party nas a lien on or interest in two funds, for a debt, and another party has a lien on or interest in one only of the funds, for another debt, the latter- has a right in equity to compel the former to resort to the other fund in the first instance for =atisfaction, if that course is necessary for the satisfaction of the claims of both parties wherever it will trench upon the rights, or operate to the prejudice of the party entitled to the double fund ” (1 Story’s Eq. Jur. [12th ed.], sec. 633).
It seems to be clear from the authorities (many of which I have examined, but not cited), that Knowlton and Eudd, also McIIarg, Campbell, Craig, Connor and Middleton have rights and interest superior to the general creditors; they did not, as did the general creditors, repose upon the personal responsibility of the assignor, but depended upon the property in ■his hands, or in the hands of his brokers. To the extent of such rights and interests the assignee must give proper recognition.
An order will be drawn in accordance with the foregoing opinion. If the parties agree on the form thereof it will be entered, if not, any party may have the same settled on five days’ notice.