EGBERT DENTON APPELLANT, v. CHARLES A. MERRILL, RESPONDENT.

*General assignment by a firm — liability of the firm for moneys belonging to the county wrongfully received and used in its business by one partner — when statements made in the schedule prepared by the assignee do not establish the intent of the assignor in making the assignment.*

This action was brought by the plaintiff to recover for the conversion of a quantity of personal property, to which he claimed title under a general assignment for the benefit of creditors made by the firm of Porter & Sperry. It was defended by the sheriff, who had seized the goods under executions issued upon judgments recovered against the firm, upon the ground that the assignment was rendered void as to the creditors of the firm, on account of a preference expressed in it, as follows:

"To pay to the board of supervisors of Chautauqua county, New York, all sums and indebtedness due Chautauqua county by the said firm of Porter & Sperry, and to pay the said board of supervisors all indebtedness due for moneys had of Orrin Sperry, treasurer of Chautauqua county, and to pay to the said board of supervisors all debts and liabilities which the firm of Porter & Sperry owe or have incurred to Orrin Sperry, treasurer of Chautauqua county, and to pay said board of supervisors all moneys had by them and used by them, which moneys belonged to Chautauqua county."

The defendant claimed that there was no existing indebtedness or liability of the firm to the said county or its county treasurer.

Upon the trial it appeared that the firm consisted of Marshall Porter and Edwin T. Sperry; that Porter owned half of the stock on hand, and that Sperry, who had no capital, had borrowed money with which to purchase the other half from a retiring partner. Edwin T. Sperry acted as deputy or clerk for his father Orrin, who had been for several years county treasurer. The moneys belonging to the county, received by the county treasurer, were deposited by Edwin in his own name, and were, from time to time, drawn from this account and deposited in the firm account, from which they were drawn and used in the business of the firm by Sperry, and also by a clerk of the firm, who was authorized to and did draw checks upon the firm account, and also upon Sperry's individual account, in which the moneys belonging to the county were deposited. The moneys so drawn from Sperry's account were usually credited to him on the books of the firm. The clerk also signed the name of the firm to two notes, made payable after date to E T. Sperry, and to one note, made payable to the order of Orrin Sperry, for moneys of the treasurer placed in the bank to the credit of the firm, and used for the purposes of its business. In the schedule prepared by the assignee the board of supervisors appeared as creditors for money had by the firm, for sums embracing these notes, respectively stated, and also for the sum of $10,461.21.

Upon an appeal from an order denying a motion for a new trial, made after a verdict had been directed in favor of the defendant:

*Held,* that the court erred in directing the verdict.

That, without deciding as to whether the appropriation of the funds which came into the custody of the county treasurer, and the manner in which this was done, created a liability of the firm to the county, either legal or equitable, yet as the assignment itself did not state the amount of the claim to be preferred, and as the evidence showed that for a portion of the funds so taken and used in the business a note of the firm was made payable to the order of Orrin Sperry, who was the county treasurer, the case should have been submitted to the jury, as they might have treated this diversion, appropriation and use of the money as the act of the firm, in which case the assignment would not have been fraudulent as against the creditors of the firm.

That the statement of the amount of the debt due to the board of supervisors, in the schedule prepared by the assignee, could not be treated as characterizing the intent of the assignor in making the assignment.

APPEAL from order of the Chautauqua Special Term, denying the plaintiff's motion for a new trial.

The action was brought to recover for the alleged conversion of a quantity of personal property, consisting of a store of goods in Mayville, N. Y., to which the plaintiff claims title by virtue of an assignment for the benefit of creditors by Marshall Porter and Edwin T. Sperry constituting the firm of Porter & Sperry, made by them to him July 23, 1884. The defendant, as sheriff of that county, levied upon and sold the goods by virtue of several executions issued upon judgments recovered against the firm.

The trial court directed a verdict for the defendant, and from the order denying a new trial this appeal is taken.

*C. D. Murray,* for the appellant.

*George Gorham,* for the respondent.

BRADLEY J. :

The ground upon which the defense rests is that the assignment made by Porter & Sperry for the benefit of their creditors to the plaintiff, was fraudulent and void as against the creditors of the assignors, on account of the preference expressed in it as follows : " To pay to the board of supervisors of Chautauqua county, New York, all sums and indebtedness due Chautauqua county by the said firm of Porter & Sperry, and to pay the said board of supervisors all indebtedness due for moneys had of Orrin Sperry, treasurer of

Chautauqua county, and to pay to the said board of supervisors all debts and liabilities which the firm of Porter & Sperry owe or have incurred to Orrin Sperry, treasurer of Chautauqua county, and to pay said board of supervisors all moneys had by them and used by them, which moneys belonged to Chautauqua county," and for the alleged reason that there was then no existing indebtedness or liability of the firm of Porter & Sperry to the county of Chautauqua or to the board of supervisors of that county.

In April, 1880, the firm of Porter & Sperry was organized. It succeeded that of Miller & Porter, and purchased the stock of goods on hand of that firm, amounting to $5,393.87. Porter retained in the new firm his interest in the property of the preceding one, which was one-half. This was all the capital he had, and he owed some debts. Sperry had no capital prior to going into the firm, and borrowed the money to purchase the interest he took in it. His father Orrin Sperry for several years had been and then was treasurer of the county of Chautauqua, and the son Edwin T. Sperry, acting as his deputy or clerk, had the charge of the business of the treasurer, and on and after the formation of his firm he had the office and did the business of the treasurer in a room of the store building occupied by the firm. Thereafter and up to near the time of the assignment, moneys which came to the county treasurer as such were used to pay the debts and bills payable of the firm. This use of the money constitutes the claim in view, and claimed to be covered by the preference referred to in the assignment of the firm of Porter & Sperry.

To avoid the inconvenience of requiring the treasurer to sign the checks to draw the money from the bank, the funds of the treasurer were there deposited from time to time to the credit of E. T. Sperry, and by his check were transferred to the credit of the firm, and drawn by it for its purposes, and sometimes the treasurer's funds were placed in the bank directly to the credit of the firm. Usually when credit was in that manner transferred and furnished to the account of the firm in the bank, the member, E. T. Sperry, took credit for it on the books of the firm; so that in consequence of its use of such funds, he appears, by the books, to have become its creditor. The business of placing these funds to the credit of the firm was not all done by E. T. Sperry, personally. The firm

had a confidential clerk and bookkeeper, who also, in the absence of E. T. Sperry (which was a considerable portion of the time), had the charge, for him, of the business of the treasurer. This clerk, by authority derived from E. T. Sperry, took moneys from the treasurer's funds and placed them to the credit of the firm in the bank. He had authority from him to draw checks in his name, and did: to transfer money in the bank from the account of E. T. Sperry to the credit of the firm. He also had authority to draw checks, drafts and notes in the name of the firm, and did so draw checks to pay its bills. He also signed the firm name to a note of date January 4, 1884, for $846.03, payable at thirty days to the order of E. T. Sperry, and one of date March 4, 1884, for $304.59, payable at one day to his order; also a note of date January 22, 1884, for $450 payable at thirty days to the order of Orrin Sperry. The evidence tends to prove that these three notes were drawn and signed by this clerk, for treasurer's moneys by him placed in the bank to the credit of the firm, and used for the purposes of its business, and that those amounts were not placed to the credit of E. T. Sperry on the books. This clerk had substantially the charge of the bookkeeping of the firm the last two years of its business. The plaintiff, as assignee, caused the schedule to be made, and in the account of creditors represented by it appears, the board of supervisors of Chautauqua county as a creditor for money had by the firm, for sums embracing those three notes respectively stated, and also for the sum of $10,461.21 in addition. The question arises whether this appropriation of the funds which came to the custody of the county treasurer, and the manner which it was done, created a liability of the firm to the county in any view which may be taken of it. The relation of the county treasurers to their respective counties, and the consequences of their default are to some extent prescribed by the statute.

Before he enters upon the duties of his office the treasurer is required to give a bond to the supervisors of the county, to be approved by the board, etc. (1 R. S., 369, § 18, amended by Laws 1874, chap. 502.) He is under the supervision of the board of supervisors so far that they may require improvement of the security given by him when, in their judgment, it is deemed expedient for the safety of the fund in his charge (Id.), and he is

required to render an account to them annually and such other time as they may direct. (1 R. S., 369, § 23 ) And all losses which may be sustained by his default in respect to moneys received by him of those collected through the means of taxation are chargeable on the county. (Id., 419, § 5.) As to such money the treasurer is practically the custodian for the county of it, charged with prescribed duties in reference to its disbursement, and his relation and duties have the nature of an agency (*Supervisors* v. *Otis*, 62 N. Y., 88; *Newman* v. *Supervisors*, 45 id., 676, 636), and the liability to third persons for money improperly levied and collected, which go to the treasurer, is that of the county and not his. (*Newman* v. *Supervisors, supra*; *Cary* v. *Curtis*, 3 How. [U. S.], 236.) They are, therefore, trust funds which the county, in its corporate capacity, may take such means, through the aid of the courts, as may be necessary for their preservation and proper uses. The person to whom the custody of these funds of the county of Chautauqua, which came to the treasurer, was entrusted, has diverted some of them from their legitimate purpose to the use and business of the firm of which he was a member, and he is liable to account for them to or in behalf of the county in a proper action for such purpose. But the fact of his liability alone did not permit the firm to give to the claim a preference, to the prejudice of its creditors; and to treat it as a liability of him only, the assignment will be deemed fraudulent and void as against the plaintiff. (*Wilson* v. *Robertson*, 21 N. Y., 587.)

When a member of a firm borrows money and uses it in the business of the partnership, or when he appropriates the money of another for that purpose, the presumption goes in behalf of the lender or owner of the fund so used of liability of the firm to him. (*Estate of Davis*, 5 Whar., 530; 34 Am. Dec., 574: *Brown* v. *Higginbotham*, 5 Leigh, 583; 27 Am. Dec., 618; *Jaques* v. *Marquand*, 6 Cow., 497; *Hutchinson* v. *Smith*, 7 Paige, 26, 33; *Ontario Bank* v. *Hennessey*, 48 N. Y., 545.) But when he borrows the money so used, upon his individual credit, of a person knowing the existence of the firm, and when he lends to his firm trust moneys held by him, without any notice to his copartner that it is such, no undertaking or contract on the part of the firm arises to pay the lender of the money or the beneficial owner of the trust fund.

This case presents a peculiar aspect in view of the question presented. The members of the firm have united in an assignment giving preference to a claim arising out of the use of money by the firm in its business, and which was appropriated to such use in violation of law. Assuming that no action at law could have been maintained against the firm to recover the amount of money so diverted by Sperry and used by the firm, the question may arise whether there are any equities in support of the claim.

The form and apparent effect given to transactions which may interrupt proceedings in actions at law, do not necessarily always defeat the application of equitable considerations, and through them the means of relief. It is a rule of equitable cognizance that funds and property impressed with a trust may be pursued until they reach a holder in good faith. (2 Perry on Trusts, § 838; *In re Le Blanc*, 14 Hun, 8; *Satler's Appeal*, 87 Penn. St., 154.

This rule is less effectual as applied to money than in its application to property other than money, for reasons obvious in and essential to business transactions. (*Ferris* v. *Van Vechten*, 73 N. Y., 123, *People* v. *M. and M. Bank*, 78 id., 269; *Stephens* v. *Board of Education*, 79 N. Y., 183.)

The evidence permits the inference that the partner Sperry had no funds of his own, and none other than those of the treasurer to his credit in the bank, and consequently those so deposited by him were impressed with the trust, and he had no right to transfer any there, from his account to that of the firm; and the same may be said of the moneys referred to, deposited directly to its credit in the bank. (*Pennell* v. *Deffell*, 4 De G. M. and G., 372; *Knatchbull* v. *Hallett*, L. R., 13 Ch. Div., 696.) And the mere fact of its deposit to the credit of the firm, did not relieve it from its character of trust fund, so as to defeat the right to follow and recover it as such. It, or the most of it, was then drawn by one member, or the clerk of the firm, upon its check, with knowledge of its character, in violation of the trust, with which it was impressed.

The question whether the firm was a recipient in good faith of the fund in this manner appropriated by it, is a question entitled to some consideration. The member, Sperry, so far as appears, took nothing from the firm on account of this money so used, except credit on its books. This was an apparent, but not a substantial

consideration. It was a mere representation bearing upon the state of the accounts, to arise only upon an accounting, which has not been had between the members of the firm. This money has gone into and contributed to produce its property on hand, and property the proceeds of which have been taken by the firm. And that such property and proceeds might not be charged on account of these funds is not entirely clear. (*Ferris* v. *Van Vechten*, 73 N. Y., 113.)

We have thus far proceeded without reference to the inquiry whether the member Porter was chargeable with knowledge of the appropriation and use of these public funds in the business of the firm; and on the assumption that he was not, we are not prepared to hold the firm liable for the moneys so used, which were placed to the credit of Sperry on its books, and express no opinion on that question as applied to the assignment; in view of the equitable considerations involved. The relation of the respective members of a firm to it, is that of agency, and for the purposes of remedy against it, each member is chargeable *civiliter* with the act of his copartner in the partnership business, and with the knowledge and purpose with which the act is performed; and in this instance the confidential clerk, in like manner, represented the firm when acting within the power with which he was invested by it. When this public money was placed to the credit of the firm, it was impressed with the trust, and the account or credit produced by it was subject to lien for its repayment. The partner Sperry and the clerk of the firm knew this, and that the funds were appropriated in violation of law and of the trust, when they drew upon it the firm checks to pay its bills. By doing this, the owner was deprived of the equitable remedy, which then existed, to reclaim the money from the bank. The intermediate act of transfer to the credit of the firm was attended with no consideration which denied to the owner such equitable right, but the defeat of it was consummated by the act of the firm, in thus drawing upon the account so produced. (*Chester* v. *Dickerson*, 54 N. Y., 1; *Bradner* v. *Strang*, 89 id., 299–306.) However difficult it might be to sustain an action in behalf of the county against the firm upon that state of facts, the inquiry may very properly arise and be entitled to consideration, whether in view of the situation and all the circumstances before adverted to, there were not equities which legally justified the

recognition by the firm of the claim and went in support of the preference which the assignment sought to give it.

But without determining or expressing any opinion on that proposition, we proceed to the consideration of the relation of the schedule to the assignment, and its effect upon the provisions of the latter, in view of the distinction which may be made of a portion of the claim from the rest of it. It will be observed that the assignment itself states no amount of the claim in question preferred by it, and that it alone may fairly be construed to cover any liability of the firm, whatever the amount of it may be, on account of the appropriation and use by it of the funds of the county treasurer. It appears that $450 of those funds were taken and used in the firm business, and a note for that amount was made in its name, payable to the order of Orrin Sperry, who was such treasurer.

The evidence tends to prove that this money was taken from the treasurer's funds by the clerk of the firm, and the note so drawn and made by him in its name, without the knowledge of the treasurer of this act; that the note was not delivered to him, but was placed in the desk as the representative asset of such amount, and that this sum was not placed to the credit of the partner, Sperry, in the company books. The conclusion, therefore, was not required that this was a loan by that partner to the firm, but rather that it was an appropriation of so much of this county fund by the firm to its business, by the consent of one member and through the act of the clerk. The jury were, we think, permitted to treat this diversion, appropriation and use as the act of the firm.

The schedule of creditors, etc., as made after the assignment, embraces the amount of this note and other sums, as those which the board of supervisors are entitled to receive, upon the liability of the assignors, amounting together to upwards of $12,000. The evidence tends to prove that the schedules were made by and under the direction of the assignee, pursuant to the requirement of the statute (Laws 1877, chap. 466, § 3, sub. 5), and not by the assignors.

This schedule may have been competent as evidence, but it was not necessarily a part of the assignment in such sense, as to make the language of the provision of the preference in question express the amount of the sums mentioned in the schedule as the amount necessarily preferred by it as the claim for county funds diverted

and used. And, therefore, the validity of the assignment does not necessarily depend upon the existence of the amount of the firm liability mentioned in such schedule. The act of making an assignment is that of the assignors, and its validity depends upon the intent with which it is done and as of the time it was made. The required schedules, when made by them, reflect upon the act of making the assignment, and may be treated as representing the purpose of its provisions and giving to them a more specific application. (*Talcott* v. *Hess*, 31 Hun, 282, 284; *Shultz* v. *Hoagland*, 85 N. Y., 464, 468–69.) It is difficult to see how the act of an assignee, subsequent to the assignment, in causing to be made a schedule "in so far as he can," can ordinarily be treated as characterizing the intent of the assignor in making it; at all events it cannot, as matter of law, be said that the assignee in such case has expressed in the schedule the purpose of the assignor when he executed the assignment, and thus give invalidity to the latter. In *Terry* v. *Butler* (43 Barb., 395), the schedule was made by the assignor, and was treated as part of his act in making the assignment and characterized the latter. That fact distinguishes that case from the one at bar. If these views are correct, the assignment may not be found fraudulent as against the creditors of the firm, if the firm was liable for any amount within the terms of the preference as expressed in the assignment, and that question should have been submitted to the jury. The new trial is granted upon this ground. While there are circumstances that might, with some force, be urged as bearing upon the question, whether the partner had reason to and did believe and understand that the treasurer's funds were being taken and used in the business of the firm during, or some part of, three and a half years, when they were so appropriated in about forty instances, we do not consider that question or express any opinion upon it, as it is not deemed necessary for the purposes of another trial, when the facts may be more or less varied by the evidence, and permit and exclude inferences which are not supported by the evidence as it now appears in the record.

The question of amount of the claim covered by this preference provision of the assignment is not, for reasons before given, necessarily involved in this review. If that instrument is sustained as valid, the amount which comes within the preference in behalf

of the county may arise upon its execution, when the creditors can be heard in such manner as they may be advised by way of support of their respective claims, and in challenging the amounts of those of other named creditors; and then considerations other than those determined on this review may arise.

The order should be reversed, and a new trial be granted, costs to abide the event.

HAIGHT and ANGLE, JJ., concurred.

Order reversed, and new trial granted costs to abide event.