Daniels, J
The defendants Seymour Lyman and Julian W Curtiss acted in the capacity of agents for the plaintiff in the sale of its manufactured articles. They failed in business and made an assignment to the other defendant in the action on the 3d of March, 1884. At the time of their failure a small amount of unsold goods remained in their hands belonging to the plaintiff, which were surrendered and delivered to it. Accounts and demands were *372 outstanding and moneys .had been collected on account of the sale of goods received by the assignors in the course of the agency. A portion of these accounts passed into the hands of the general assignee under the assignment, and it was the object of the plaintiff’s action to secure an accounting concerning the sales made and the outstanding indebtedness owing by the purchasers and the proceeds which had been received on account of any of such sales. And it resulted in a determination, included in the interlocutory judgment, that both the assignors and the assignee should account for and deliver over to the plaintiff the moneys respectively by them received, and the accounts still outstanding, or the sale of the plaintiff’s manufactured articles.
The assignors were directed to account for what they had received, and the assignee for all that had been transferred to him under the assignment of these accounts or demands. A reference was ordered to a referee to take the accounting, and upon the hearing before him, both the amounts, which have been collected,and the accounts still outstanding, were ascertained and included in his report, and for the amounts for which the- assignors remained liable, judgment was directed against them and against the assigneefor the recovery of the accounts which had passed into his hands under the assignment.
The defendants by their appeals have drawn in question the accuracy of these determinations contained in the interlocutory and final judgment. And the ground taken in their'favor is that a settlement was had previous to the execution and delivery of the assignment by which the-defendants Lyman and Curtiss became personally indebted, to the plaintiff for the amount remaining unpaid, and discharged from liability in their capacity of agents. As the result of the settlement, promissory notes were made and delivered by them to the plaintiff between the 11th of October, 1883, and the 12th of January, 1884, for the aggregate-amount of $9,500, which were unpaid at the time of the commencement of the action, and were at the time of the trial in the possession of the plaintiff, and were offered to be surrendered and were in fact deposited with the clerk for that purpose during the trial. These notes were relied upon as a discharge or satisfaction of the plaintiff’s demands against Lyman and Curtis in their capacity of agents, and entitling them to the outstanding accounts' and obligations for the goods of the plaintiff which they had sold, and vesting them with the right to transfer the uncollected portion by their general assignment to the other defendant as their assignee.
This position was taken in behalf of the defendants under the agreements made for the conduct and manage *373 ment of the business of the agency. The first agreement was with the defendant Lyman, who was then engaged individually in carrying on business. That was made in February, 1879, and it was continued as the sole agreement for the agency until the 14th of August, 1882.
In the meantime the defendant Curtis entered into the same business with Mr. Lyman and continued its transaction under this agreement. By the terms of the agreement which were accepted by Lyman, the plaintiff gave him the agency of its goods in the city of New York. He was to have their exclusive sale in that and the adjacent cities, and the control of all export trade secured by himself. The goods were to be billed to him at thirty-five per cent from the list, with an additional discount of five per cent for all cash received within thirty days from the dates of the sales made by him. He was to receive the goods as the plaintiff’s, keep them insured for it and bill them on its printed bill-heads, and remit to it all moneys and checks due to it. By the 10th of every month he was to send a complete business like statement of the preceding month, distinguishing each kind of goods sold and whether for cash or charged on account and the amounts received and owing, with the names of the parties. The sales were to be made for cash or on sixty days’ time, and where he thought best he was permitted to accept notes for ninety days. These are the substantial features of the first agreement, and they created a clear and well defined agency on the part of the defendant Lyman and of the firm of Lyman & Curtiss after Curtiss became interested in the business. And it legally resulted from those terms that the plaintiff continued to be the owner of the goods sent forward until they were actually sold, and when the sales were made, the proceeds, accounts or notes obtained from them became the property of the plaintiff. And if the business had continued to be carried on under this agreement to the time of the assignment there would not be the least ground for doubt that the plaintiff would be entitled to recover the proceeds of the sales, together with the outstanding demands and accounts.
But on the 14th of August, 1882, a further agreement was made between the plaintiff and the firm of Lyman & Curtiss for the sale of its manufactured goods. This last agreement, however, was not intended wholly to take the place of that which was made in 1879, but to modify it in essential respects. That it was not designed to deal with the firm of Lyman & Curtiss, or to consign the plaintiff’s manufactures to that firm, in any other capacity than that of agents, is exhibited by the first paragraph of the agreement in which their business is mentioned as “New York *374 agency for the sale of the Paris Hill Manufacturing Company’s goods.” And that was to be carried on as it previously had been by the assignors. It was then declared that the discounts, and the prices then in force, were to be continued, and during the week in which the second agreement was made, a settlement was to be had covering thp balance due of sales to the first of August, less the sum of $1,000 left out as properly belonging to a suspense account. And to that balance a specified amount of interest was to be added. Then followed the agreement upon which settlements were afterwards to be made between these parties." That part of the agreement is in these words: “In all subsequent settlements, which are to be rendered by the thirteenth of each month, the total value of the preceding month’s sales are to be included, and sixty days’ time shall' be allowed thereon without interest. The method of settlement agreed upon is as follows: Lyman & Curtiss are to remit to the Paris Hill Manufacturing Co., by the thirteenth of each month, the amount of money received in settlement of all accounts up to the last day of said preceding month, and for the balance of all outstanding accounts, less $1,000 left out, as before stated, the four months note of Lyman & Curtiss shall be sent forward, with interest after sixty days added, at seven per cent. This form of monthly settlement is agreed upon between us, the above-named $1,000 being left out as a protection against loss to Lyman & Curtiss in the management of this agency account. And it is clearly to be inferred from this part of the agreement that the business in other respects was to be carried on under the preceding agreement. By that the goods still remained the property of the plaintiff to be insured for it, the bills of the sales to be made on the printed bill-heads of the plaintiff and accounts to be rendered for such sales.
The business was still to be that of an agency, and the settlements to be made were in no manner declared to be by way of satisfaction of the plaintiff’s rights to the proceeds, accounts or demands arising upon the sale of its goods. But what was agreed to be done was to adjust the business of each preceding month by the 13th of the following month. To collect in the accounts and demands, sixty days were allowed as a convenient period for that object. And the agents were to include in their remittances the amount of money received up to the last day of the preceding month, and for the balance, less the sum of $1,000, to forward their notes due in four months, with interest after the expiration of sixty days. The agreement in no way declared the effect which these notes should have upon the relation of these parties. It was not agreed that they should be received by way of payment or satisfaction of the *375 balance remaining unpaid on the sales of the preceding month. Neither was it in any form agreed that the uncollected accounts or demands should after the making and delivery of the notes become the property of the agents, or that the plaintiff should be excluded in case the notes remained unpaid, from the right still to resort to the debtors for the payment of the moneys for which the goods had been sold. That the notes were not intended to be a payment or satisfaction to the plaintiff, is further disclosed by the fact that $1,000 was to be left out of the amount for which they were respectively to be given. And the object of leaving the $1,000 out of the notes is stated to have been to protect Lyman & Curtiss in their management of the agency account. This statement is quite significant against the theory upon which the defense has been made to rest, for it shows the purpose of the parties to have been not to make a complete and final settlement through the execution and delivery of the notes, but to place the plaintiff in the position where he could use such notes and make them available in his business, while so much of the business of the agency was proceeding as included the collection and settlement of the unpaid accounts.
The notes by the terms of the agreement were to be sent forward, and $1,000 of the indebtedness of the preceding month was to be excluded .from them, for the final protection of the agents in the management of the business. And this management, so far as it related to the settlements agreed to be made, was designated still as an agency account. From these features of the agreement it is to be inferred that the changes were made more effectually to promote the convenience of the parties to it.
That was to be done by permitting the agents to sell the goods upon the_ terms of credit previously authorized and to place the plaintiff in the position where it could anticipate the realization of the proceeds of the sales through the instrumentality of the notes which were to be sent forward, leaving the complete and final settlements to be made after the accounts should be wholly collected, when a disposition would take place of the reserve monthly sum of $1,000. And until that should be done it was not contemplated that the business should be closed in such a manner as to deprive it of the obligations of an agency. This is made still more evident by the fact that the agreement designated the business as an agency, and finally referred to the accounts as an agency account after the notes should be forwarded by the agents to the plaintiff. And this construction is still further confirmed by so much of the first agreement as was left unchanged by the one made in August, 1882. If the notes had been paid it would follow, as the defendants’ *376 counsel has maintained, that they would so far have satisfied and completed the business of the agency, but until they should be paid, the agreement was not made in such a man-as to entitle them to that effect. For they were designed to be made as a convenient mode through which the business of the agency should to that extent be managed and carried on, thereby securing to thé plaintiff an advantage it would not otherwise have obtained in the ability to use the agent’s paper.
The making and delivery of the notes could not legally be attended with any greater effect than would have been a guarantee of the sales themselves by the agents.
. And the rule is settled where such a guarantee may be made and the agent “undertakes to pay if the purchaser fails, or he sold without disclosing his principal, a note taken by him as factor would still belong to the principal, and he might waive the guarantee and claim possession of the note or give notice to the purchaser, not to pay it to the factor.” 2 Kent Com., 626. And upon a state of facts, not materially differing from those in this case, it was held in jRobertson v. Livingston (5 Cowen, 473), that the giving of a note for a balance owing by a commission merchant to accommodate the owner of the property sold, was not a payment or satisfaction precluding the plaintiff from after-wards recovering the purchase price for the property itself. And Kelly v. Scripture (9 Hun, 283), proceeded upon the same principle. And the rule is quite general that the making and delivery of a note for a balance created by previous dealings between the parties, is not, without a special agreement to that effect, either a payment or satisfaction of such balance.- Jagger Iron Company v. Walker, '76 N. Y., 521. And where no agreement has been made that the note shall be taken in payment or satisfaction, it will not discharge a preceding liability. And in dealings of this description the owner of the goods sold, will still be at liberty on surrendering and returning the notes, to follow the proceeds of its property and recover the indebtedness created by its sales. Newton v. Porter, 69 N. Y., 133, 138. And that may be done as far as such proceeds can be identified and traced in the hands of an assignee. Ferris v. Van Vechten, 73 N. Y., 113.
There was no obstacle, whatever, in the way of tracing the identity of the proceeds, demands and accounts, with the sale of the plaintiff’s property through the agency created in this manner. And the judgment has provided for a recovery by the plaintiff only to that extent. The unpaid notes which had previously been delivered, were offered to be surrendered at the trial and not being accepted *377 were deposited with the clerk for the benefit of the defendants.
That was all that could be exacted as a condition for the recovery, and the judgment should be affirmed, together with the usual costs.
Van Brunt. Ch. J., and Brady, J., concur.