Tucker, P.
The only question of any difficulty in this case, I think, is as to the existence of the partnership; and I am of opinion, that the evidence sufficiently establishes it. Partnership is “a contract between two or more persons for joining together their money, goods, labour and skill, or either or all of them, upon an agreement to divide the gain or loss proportionably between them.” Wats. on Partn. 1. It is not confined to mercantile speculations or adventures, but may exist between mechanics, attorneys, carriers or farmers. Coope v. Eyre, 1 H. Black. 37. Its existence is established by proof of an actual community of interest, accompanied by an agreement to participate in the profits, and contribute to the losses of the concern. Such proof places beyond question the liability of the partner; but even without it, a party may be charged as partner, where ho appears and exhibits himself to the world, as a person connected with the partnership, and as forming a component member of the firm. In this case, however, I do not think the evidence fixes upon Brown the character of a nominal partner; that is, of one who, without an interest in the concern, allows his name to be used, and holds himself out t.o the world as having an apparent interest. It must be admitted, I think, that Brown is not chargeable, unless such an actual interest can he shewn in him, as constitutes a partnership; for as to the loose declarations and opinions of witnesses, that he was always considered a partner, they are to be very cautiously received, because of the danger of establishing so important a contract upon so weak a foundation. However, Brown’s interest is proved.
To establish it, it must be shewn, that the parties have joined together their money, goods, labour or skill, or either or all of them, upon an agreement to participate in the pro *586 fits, from which is also implied by law a liability for the losses; for no stipulation can protect a party who receives the profits, from a corresponding responsibility for losses. Ex parte Hamper, 17 Ves. 412. I think it cannot be doubted, that these parties did join together their property, labour and skill. The defendant acknowledges, that Brown told him, “he placed under the management of Powell a certain number of hands.” Here, then, was an union of the property of Brown with the management of Poto ell. Moreover, they were placed on a farm, of which Powell was the lessee. He thus brought into the concern his skill and labour, and his lease also, and Brown brought in his slaves. It is proved, that Brotan, in speaking of these transactions, recognized the partnership,in the farm; and the overseer deposes, that Brown took an interest in the farm, which justified the belief that he was a partner; that he frequently visited it, and inquired about its progress, and as the witness thinks, said, in his presence, that he was in partnership with Powell in the farm. With this testimony, I do not perceive how we can question the fact that there was an union of the property on the one hand, and of property and attention on the other, between these two parties; and this too, with a distinct admission by each, of the power of the other over the affairs of the concern; for Brown admitted that he had placed his hands under the management of Powelland Powell has abundantly admitted Brown's interest, and, of course, his powers as a partner. It is, indeed, worthy of remark, that Brown did not tell the defendant Robertson, that he had hired his slaves to Powell, but that he had put them under his management. This implies, that he also still retained control over them. If he did so, it must either have been as partner, which is the matter to be proved, or as owner, in which case his liability would be unquestionable, as Powell, in this view, would be only his agent. Then, was there an agreement to participate in the profits 1 This is, in effect, admitted ; for Brown told the defendant Robertson, that he was to receive two thirds of the nett proceeds of the crop, deducting all expenses. Now, the profits wore precisely *587 the nett proceeds of crop, after deducting all expenses; therefore, he was to receive two thirds of the profits. If he had bargained to receive two thirds of the crop, without regard to the expenses, some doubt, perhaps, might be thrown over the question ; but as the expenses were first to be deducted, it is obvious that he was not only to participate in profits, but to be affected by losses; for if the expenses exceeded the crops, he was to get nothing. Moreover, being thus entitled to profits, and a fleeted by losses, he could not limit or contract that liability, so as to affect third persons. For, even if it had been expressly agreed, that he should not be affected with losses, farther than the whole amount of the crop, that agreement would not have absolved him from a further liability, so far as third persons were concerned. Gow on Partn. 19. 20.
If there was a partnership in this case, I think the decree is manifestly right. It is objected, indeed, that Mrs. Crawford’s rent was not properly chargeable against the partnership. I cannot think so. By the agreement, Brawn was to have two thirds, deducting all expenses. The rent under the lease was one of those expenses. By the agreement, then, the rent was to be paid out of the crops of the concern. The lease was brought into the concern by Powell. Though he was the original renter, yet when he formed the partnership, the lease was in effect assigned to the partnership. Admitting the partnership, this is obvious; and if so, then, as assignees, the partners were liable to the lessor. Powell was no longer the tenant, but Powell Brown, as partners, were tenants; and as terre-tenants they were responsible for the rent, and it has been properly charged against the firm, by Higginbotham <Sp Co. who paid it. In this aspect, it is perfectly unimportant, when the entry was made, since the partnership was liable for the amount. The same remark applies to the wages of the overseer, which being a fair charge against the firm, it was entirely unimportant when the entry was made. Both debts were due either to Mrs. Crawford, and the overseer, or to Higginbotham Co. who had paid them; and as Higginbotham, cf- Co. *588 paid them by direction of one of the firm of Brown f Poioell,though after its dissolution, it cannot be regarded as an officious payment. For until the affairs of a partnership are settled, and outstanding engagements are made good, the partnership must in legal contemplation have a continuance, so-far at least as respects winding them up. Gow 312. [287]. 15 Ves. 226, 7. 16 Ves. 57. 1 Swanst. 480.
As to the 42 dollars due from Mrs. Crawford to Brown, it is obvious that he could not have set off this debt at law, even against her. But whether he could do so or not in ■equity, I am of opinion, that as Higginbotham f Co. at the instance of Powell, paid off the whole 170 dollars to Mrs. Crawford, they are not liable to the set-off at law or in equity.
I do not perceive, that Powell’s being the agent of Higginbotham cf Co. makes any difference in the case.' As their agent he bound them, indeed, by his acts, and therefore they cannot now gainsay the credits to Mrs. Crawford and the overseer, though they should lose the amount. But he was also partner of Brown, and when he took up goods for the firm, or paid debts of the firm out of Higginbotham f Co.’s funds, he was certainly acting for himself and partner, and the firm is chargeable accordingly. Upon the whole I am of opinion, that there is no error in the decree and that it must be in all things affirmed.
The other judges concurred. Decree affirmed.