EDWARD A. DURANT, JR., Respondent, *v.* HENRY R. PIERSON, as Survivor, etc., et al., Appellants.

Where a partnership is dissolved by the death of one of the copartners, the survivor is entitled to the possession and control of the assets of the firm, which he may sell, mortgage and dispose of to pay the debts and close up the affairs of the copartnership; in order to do this he may borrow money, and where a third person has in good faith loaned money for that purpose, which has been faithfully applied in liquidation of the firm debts, an equity is created, for the satisfaction of which the assets of the firm may properly be devoted. (VANN, J., dissenting.)

P., the surviving member of the firm of H. R. P. & Son, for the purpose of paying firm obligations, borrowed money from the C. N. Bank, for which he gave a note payable on demand, signed with the firm name by him as survivor; he applied this money in payment of firm debts. At the time said note was given the firm was insolvent, but P. and the bank were ignorant of that fact. P., as survivor, made an assignment for the benefit of creditors in which said bank was preferred the amount of said note. In an action to set aside said assignment as fraudulent and void because of this preference, *held* (VANN, J., dissenting), that the claim of the bank was one which, in justice and equity, should be paid out of the firm assets, and so, that its preference did not render the assignment fraudulent.

(Argued January 27, 1891; decided March 17, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made November 24, 1890, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Marcus T. Hun* for appellants Pruyn and Pierson. The complaint in this case does not state a cause of action. (*Cuyler* v. *McCartney*, 40 N. Y. 221; *Bullis* v. *Montgomery*, 50 id. 352; Burrill on Assignments, § 404; *Rathbone* v. *Hooney*, 58 N. Y. 467; Bigelow on Est. 143; *Crook* v. *Rindskopf*, 105 N. Y. 476; *Wood* v. *Amory*, Id. 278.) A surviving partner may make a general assignment of the firm' property with preferences. (*Haynes* v. *Brooks*, 116 N. Y. 487–490; *Williams* v. *Whedon*, 109 id. 333.) The rights of the firm creditors to the firm assets must be worked out through the equities existing between the partners, and only thus. (*Saunders* v. *Reilly*, 105 N. Y. 19, 20.) The equity ceases when one partner acquires the entire firm property. (*Dimon* v. *Hazard*, 32 N. Y. 65, 78; *Stanton* v. *Westover*, 101 id. 265; Story on Part. § 358; *Smith* v. *Howard*, 20 How. Pr. 121; *Fitzpatrick* v. *Flanxigan*, 106 U. S. 648.) On and after the death of H. R. Pierson, Sr., the absolue title to the firm property vested in H. R. Pierson, Jr., the survivor. (*Crook* v. *Rindskopf*, 105 N. Y. 476; *Williams* v. *Whedon*, 109 id. 338.) A surviving partner may borrow money to pay firm obligations and repay the same from the firm assets. (*Haynes* v. *Brooks*, 8 Civ. Pro. Rep. 106; *Emerson* v. *Senter*, 118 U. S. 8.) Under the circumstances of this case, in view of the fact of the agreement made by the surviving partner with the bank that this money would be paid back out of the firm assets, that the note was given in the firm name, the amount credited to the firm account, that it was used to pay firm debts, and the mistake of fact as to the solvency of the firm, equity will give a lien upon the firm assets. (*Perry* v. *Bd. of Missions*, 102 N. Y. 99; *Fowler* v. *M. L. Ins. Co.*, 28 Hun, 195; *Smith* v. *Smith*, 51 id. 164.) The rights of the National Commercial Bank were properly subrogated to the rights of Durant and Rathbone. (*Gaus* v. *Thieme*, 93 N. Y. 225; *Sanford* v. *McLean*, 3 Paige, 122; *Wilkis* v. *Harper*, 1 N. Y. 586; 2 Barb. Ch. 338.) The burden of proving the assignment to be fraudulent rests with the plaintiff. (*Bernheimer* v. *Rindskopf*, 116 N. Y. 428–436; *Crook* v. *Rindskopf*, 105 id. 485;.

*Knapp* v. *McGowan*, 96 id. 75–87 ; *Rapalee* v. *Stewart*, 27 id. 310–315 ; *Benedict* v. *Huntington*, 32 id. 219 ; *Townsend* v. *Sterns*, Id. 209 ; *Bagley* v. *Bowe*, Id. 171, 177, 178.) The judgment was wrong in directing that all the firm assets be paid to the receiver. (Code Civ. Pro. § 1873.)

*Abraham Lansing* for the National Commercial Bank of Albany, appellant. The $15,000 note, was in equity a promise binding the firm assets. The maker might have sold the assets of the firm to the bank, and out of the proceeds of the sale, paid the firm debts which were discharged by the avails of the note ; or made a valid promise to the bank in the firm name by way of pledge or mortgage to secure the money which he borrowed. (*Williams* v. *Whedon*, 109 N. Y. 383 ; *Loeschigk* v. *Hatfield*, 5 Robt. 26 ; 51 N. Y. 600 ; *Bradfords Com. Bank Co.* v. *Cure*, L. R. [31 Chan.] 324.) An extension of the time of payment of a note, or waiver of the Statute of Limitations, or contract by pledge, or bond, or note, or otherwise made after the dissolution of a firm, by a continuing or surviving partner, will not charge a former copartner with an individual liability ; and that is the question determined in the following cases, which were actions in the nature of assumpsit brought at law, to charge former copartners as joint debtors, upon promises made without their assent after dissolution. (*VanKeuren* v. *Parmelee*, 2 N. Y. 523 ; *National Bank* v. *Norton*, 1 Hill, 575 ; *Lansing* v. *Gaines*, 2 Johns, 300 ; *Sanford* v. *Mitchell*, 4 id. 226 ; *Vernon* v. *Manhattan Co.*, 22 Wend. 189 ; *Mitchell* v. *Ostrom*, 2 Hill, 520 ; *Lusk* v. *Smith*, 8 Barb. 570.) It is a wholly different question whether the assets of a partnership, over which the surviving partner has confessedly the entire power of disposition, are equitably bound by a general firm promise, made for the purpose of binding them and inuring to their benefit.

*George L. Stedman* for respondent. The debt of $15,000 contracted by the survivor was his individual debt, and not a debt for which the firm assets were liable. (*Stedman* v. *Fied-*

*ler*, 20 N. Y. 437; Pars. on Part. 440; *Farr* v. *Merrill*, 53 Hun, 35; *Hooley* v. *Gilve*, 9 Daly, 104; *Lark* v. *Smith*, 8 Barb. 570; *Bloodgood* v. *Bruen*, 8 N. Y. 362; *Van Keuren* v. *Parmelee*, 2 id. 523; *Sanford* v. *Michler*, 4 Johns. 224; *N. Bank* v. *Norton*, 1 Hill, 575; *Stewart* v. *Robinson*, 21 Abb. Pr. 63; Story on Part. 343; 2 Kent's Comm. 63; *Hull* v. *Laning*, 91 U. S. 170; *Lansing* v. *Gaines*, 2 Johns. 300.) The purpose for which the debt was created and the application do not change the personality of the debtor or the character of the indebtedness and render the firm assets liable. (*Turner* v. *Jaycox*, 40 N. Y. 470, 476; *Coster* v. *Clark*, 3 Edw. Ch. 411; *N. Bank* v. *Thomas*, 47 N. Y. 15.) An assignment of partnership property preferring or directing the payment of individual debts before partnership debts are fully paid is fraudulent and void. (*Wilson* v. *Robertson*, 21 N. Y. 587; *Menagh* v. *Whitwell*, 52 id. 146; *Bulger* v. *Rosa*, 119 id. 459, 465.) There is no principle of equity that can be successfully invoked in this case to change this legal status. (*Haynes* v. *Ward*, 4 Johns. Ch. 123; *Hubbell* v. *Carpenter*, 5 N. Y. 171; *Wilkes* v. *Harper*, 1 id. 586; *M. Ins. Co.* v. *Caleb*, 20 id. 177; *Gans* v. *Thiene*, 93 id. 225; *Acer* v. *Hotchkiss*, 97 id. 395; *Perkins* v. *Hall*, 105 id. 539; *Saunders* v. *Reilly*, Id. 19, 20; Story's Eq. Juris. § 12; Bispham's Eq. Juris. § 12.) If the $15,000 loan had been otherwise proper, the fact that the amount due the bank was only $10,150, the sum of $4,850 having been paid while the assignment was in process of preparation and a few minutes before its execution, renders the assignment void. (Bishop on Ins. Debt. [2d ed.] 234, § 212; *Kavanaugh* v. *Beckwith*, 44 Barb. 197; *Talcott* v. *Hess*, 31 Hun, 282; *Oddie* v. *Bank*, 45 N. Y. 735.) The sufficiency of the complaint in this case has been adjudicated on motion of defendants and acquiesced in. (*Durant* v. *Pierson*, 29 N. Y. S. R. 510.)

HAIGHT, J. This action was brought to set aside an assignment made by the defendant Henry R. Pierson, as survivor of the late firm of Henry R. Pierson & Son, to the defendant

Robert C. Pruyn, for the benefit of creditors, upon the ground that it was fraudulent and void as against the creditors of the firm for the reason that it directed the payment to the National Commercial Bank of the sum of fifteen thousand dollars.

The referee has found as facts that Henry R. Pierson, the elder, died on the 1st day of January, 1890, leaving the defendant Henry R. Pierson, his son, as the sole surviving member of the firm; that the firm kept an account with the National Commercial Bank of Albany in the name of Henry R. Pierson & Son, which was open and unsettled upon the books of the bank on the 9th day of January, 1890, at which time the defendant Pierson made application to the bank for the loan of fifteen thousand dollars; that upon making such loan there was credited upon the books of the bank to the firm the sum so loaned, and a note was given therefor payable on demand signed in the name of the firm by Henry R. Pierson, survivor; that $10,150 thereof was subsequently drawn out of the bank by the checks of the defendant Henry R. Pierson, signed by him as survivor, and the same was applied and used in the payment of the debts of the firm. The referee further found as facts that the purpose of said defendant Henry R. Pierson in applying for and obtaining such loan was to procure money with which to pay the obligations of the firm, which had matured or were about to mature, and that the bank understood such to be the purpose of the loan at the time of making the same; that the firm was in fact insolvent on the 1st day of January, 1890, at the time of the decease of the elder Pierson, but that such fact was not known to either the defendant Pierson or the National Commercial Bank at the time the loan was made. He further found as a fact that in inserting in the assignment the direction to pay the National Commercial Bank of Albany from the firm property the amount of the note, the defendant Pierson acted with intent to hinder, delay and defraud the creditors of the firm, but that at the time of making such assignment the defendant Pierson believed that such note was a firm obligation or an obligation which was legally enforceable against the property and assets

of the firm, and that he, therefore, was not morally chargeable with wrong in directing its payment out of the property of the firm; that the appropriation by him of the money borrowed of the bank to the payment of the firm debts created a claim in his favor against the estate which before the assignment could have been properly paid out of the firm's assets. As a conclusion of law he found that the debt created by the loan by the National Commercial Bank was the individual debt of the defendant Pierson, and not that of the firm; that the assignment was consequently fraudulent as to the plaintiff, and directed judgment accordingly.

If the debt created by the loan be the individual liability of the survivor, and one that the firm ought not to pay, and the firm be insolvent, the survivor had no right in his assignment to direct its payment out of the firm's assets, and by so doing the assignment was rendered fraudulent as to the creditors of the firm. (*Wilson* v. *Robertson*, 21 N. Y. 587; *Menagh* v. *Whitwell*, 52 id. 146; *Second National Bank of Oswego* v. *Burt*, 93 id. 233–245; *Bulger* v. *Rosa*, 119 id. 459–465.)

It thus becomes important to determine whether the loan contracted by the survivor became a firm obligation for the payment of which its assets may justly be applied. As we have seen, the note given upon procuring such loan bore the name of the firm and that of Henry R. Pierson as survivor, but at the time that this note was given it was known to all of the parties concerned that the senior member of the firm had died.

The death of a partner puts an end to the copartnership, and there is no longer any power or authority of the surviving partners to carry on for the future a partnership trade or business or to engage in new transactions, contracts or liabilities on account thereof. (Story on Partnership, §§ 342, 343; *Hall* v. *Lanning*, 91 U. S. 160–170; *Farr* v. *Morrill*, 53 Hun, 31–35.)

It is thus apparent that whilst the note in form would appear to create an obligation of the firm, it is at law unavailable as such for the reason that there was no power in the sur-

vivor to make it. But it does not follow but that it is a claim which ought in justice and equity to be paid out of the firm's assets. If it is, the preference in the assignment would not be void for the law will not declare fraudulent that which equity adjudges right and proper. (*Denton* v. *Merrill*, 43 Hun, 224–229.)

We must, therefore, consider whether there are equities which will support the claim of the bank to be paid out of such assets. It is apparent that the money borrowed from the bank by the survivor was for the purpose of paying the creditors of the firm the claims then matured and pressing. The amount of the loan was credited upon the open account of the firm with the bank and subsequently ten thousand dollars thereof or thereabouts were drawn out by the survivor upon his check and used in the payment of the liabilities of the firm. At the time this loan was made it was not supposed by the officers of the bank or the surviving partner that the firm was insolvent, and no question is made but that both parties acted in good faith. The question is, therefore, presented whether a surviving partner may in good faith borrow money for the express purpose of paying the debts of his firm, and by so applying the money borrowed create an equity for the satisfaction of which the assets of the firm may properly be devoted. As we have seen, the survivor became entitled to the assets which he had the right to sell, mortgage and dispose of in order to pay the debts and close up the affairs of the copartnership. If he had the power to sell or mortgage, it would seem to follow that he had the power to borrow and pledge the assets for the repayment of the loan, and the amount borrowed having been faithfully applied in liquidation of the debts of the copartnership, equity will recognize the justness of the claim of the party making the loan. Cases may arise where the exercise of such authority may be highly expedient, if not necessary, for the preservation of the rights of creditors and persons interested in the distribution of the assets of the firm; as for instance, creditors may by levy expose the assets to a forced public sale under circumstances which would work great sacrifice to the

estate.    In case a survivor should be insolvent, he might be
able to raise money by a pledge to repay out of the partner-
ship assets when he could not obtain it upon his own credit.
We do not see that harm could result to the other creditors by
permitting this to be done, for it would not increase the obli-
gations of the firm nor lesson their share in the distribution of
the assets in case the firm be insolvent.    It is not questioned
but that the survivor had the right to turn out as a security or
pledge the assets of the firm in payment for the money received
by him.    He could have sold the assets and repaid the money
loaned at any time before executing the assignment, and with-
out taint of fraud.    It is not apparent how the rights of the
parties are changed and the act of the survivor made fraudu-
lent by doing that in the assignment which he had the right to
do immediately before executing it.

The precise question involved in this case does not appear
to have been passed upon in any reported case so far as we
have been able to discover except in *Haynes* v. *Brooks* (8 Civ.
Pro. Rep. 106–113), where an assignment was made for the
benefit of creditors by a surviving partner.    In that case as in
this the creditors had loaned money to the surviving partner
to pay a note of the firm.    VANVORST, J., in commenting upon
the transaction said : "If a firm obligation was retired by the
use of the money loaned or advanced by Brown & Co. the sur-
viving partner would have been entitled to be repaid out of
the firm property.    As the moneys of Brown & Co. in fact
paid a firm obligation I see no objection in the subrogation of
them in equity to the rights of the surviving partner or to the
regarding of them as entitled to be repaid out of the firm
assets.    That works injustice to no one."    The learned judge
concluded by ordering the complaint dismissed, thereby sus-
taining the validity of the assignment.    This case was affirmed
in the General Term, 42 Hun, 528, and in this court in 116
N. Y. 487.    This question, however, was not considered in
either of the appellate courts.

In *The Matter of the Estate of Davis and Desauque* (5
Whart. 530), it was held that after the dissolution of a copart-

nership the partner authorized to settle the estate may borrow money on the credit of the firm for the purpose of paying its debts, and if the credit be given in good faith, though with a knowledge of the dissolution, and the money borrowed be faithfully applied in liquidation of the debts of the partnership, the creditor has a claim against the firm assets and is not to be considered as a creditor merely of the partner borrowing.

In the case of *Prudhomme* v. *Henry & Laurans* (5 Louisiana Rep. 700), it was held that where a liquidating partner after dissolution has borrowed money to pay the debts of the firm, the partnership is liable so far as the evidence shows that the money was used for the benefit of the firm.

In the last two cases the partnerships were not insolvent, and the question arose as between the partners. The courts, however, recognized the claim of the lenders as one which ought to be paid by the partnership.

In the case under consideration it is true that the partnership is insolvent, and the question arises as between the bank and creditors of the partnership, but the creditors have not been harmed or prejudiced by the action of the bank in loaning the money to the survivor, for the assets were increased in value to the amount of the loan and the money drawn out of the bank was applied in extinguishment of the claims of the creditors, thus reducing to that extent the liabilities of the firm.

When a partnership is dissolved by the death of a partner, the survivor is entitled to the possession and control of the joint property for the purpose of closing its business and to that end and for that purpose he may, according to the settled principles of the law of partnership, administer the affairs of the firm and by sale, mortgage or other reasonable disposition of the property make provision for meeting its obligations. He may, for that purpose, borrow money and give a valid pledge of the copartnership property for its repayment. (*Williams* v. *Whedon*, 109 N. Y. 333; *Emerson* v. *Senter*, 118 U. S. 3-8; *Fitzpatrick* v. *Flannagan*, 106 id. 648; *Butchart* v. *Dresser*, 4 DeGex, McNaughton & Gordon,

542; *S. C.*, 10 Hare, 453; *In re Clough, Bradford Commercial Banking Co.* v. *Cure,* L. R. [31 Chy. Div.] 326.)

In *Case* v. *Beauregard* (99 U. S. 119–124), Mr. Justice STRONG in commenting upon the rights of partners in a suit involving the marshalling of the assets says : "The right of each partner extends only to the share of what may remain after payment of the debts of the firm and a settlement of its accounts. Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner. This is an equity that partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm. The latter are said to have the privilege or preference sometimes loosely denominated a lien to have the debts due to them paid out of the assets of a firm in course of liquidation to the exclusion of the creditors of its several members. This equity is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the equity of the individual partner to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditors of the firm cannot be. (*Rice* v. *Barnard,* 20 Vt. 479 ; *Appeal of the York County Bank,* 32 Pa. St. 446.)

But so long as the equity of the partner remains in him, so long as he retains an interest in the firm assets as partner, a court of equity will allow the creditors of the firm to avail themselves of his equity and enforce through it the application of those assets primarily to the payment of the debts due them whenever the property comes under its administration.

In the case of *Saunders* v. *Reilly* (105 N. Y. 12), it was held that a mere general creditor of a firm having no execution or attachment has no lien whatever upon its personal assets. That while firm creditors are entitled to a preference over creditors of the individual members of the firm in the payment of their debts out of the assets in the course of liquidation, their equity is not held or enforceable in their own right, but is a derivative one, practically a subrogation of the

equity of each individual partner to have the firm assets
applied primarily to the payment of its debts, and where no
such equity exists in favor of any member of the firm the
firm creditors have none and, therefore, where a judgment is
recovered against all the members of a firm upon a joint obli-
gation, but not an indebtedness of the firm, the firm property
may be levied upon and sold on execution issued on the
judgment. (See also *Dimon* v. *Hazard*, 32 N. Y. 65; *Stanton*
v. *Westover*, 101 id. 265; *Kirby* v. *Schoonmaker*, 3 Barb. Ch.
46; *Brown* v. *Higginbotham*, 27 Am. Dec. 618; *Peyton* v.
*Stratton*, 7 Gratt. 380; *Stebbins* v. *Willard*, 53 Vt. 665.)

It appears to us that the conclusion is warranted from the
authorities referred to that where a person in good faith loans
money to a surviving partner, and where the money is faith-
fully applied by such partner in satisfaction of the liabilities
of the firm, the claim becomes one which in equity should be
paid out of the assets of the firm; and in an accounting between
the survivor with the personal representative of the deceased
partner, equity will recognize the right of the surviving part-
ner to have the money so borrowed and applied by him repaid
out of the assets of the firm, and an assignment so directing
is not fraudulent.

Attention is called to the fact that the deceased partner left
a will making the survivor his sole devisee and legatee, and it
is claimed that he left no individual debts. If this were so it
is not apparent that it would affect the equities of the bank,
but the evidence is silent upon the question as to whether or
not the deceased left individual debts. The referee refused to
so find, and we cannot assume that there were none.

It may also be claimed that the firm being insolvent the
survivor has no equities to which the bank can be subrogated
for the reason that he is liable individually for the payment of
the firm debts. But the bank is not asking for any relief by
way of subrogation, it is only defending the provision already
made for it in the assignment from the claim of fraud. Even
though both the firm and the survivor were insolvent, the sur-
vivor still had the right to have his contract recognized, and

to say which of the creditors should be paid first and to so provide in his assignment. ( *Williams* v. *Whedon, supra.*)

It follows that the judgment should be reversed and a new trial granted, with costs to abide the final award of costs.

VANN, J., dissents upon the ground that the note preferred in the assignment as a firm debt was simply an individual debt of the surviving partner, who, as he did not bind the firm in creating the debt, could bind neither it nor its property by directing payment out of the firm assets.

All concur with HAIGHT, J., except VANN, J., dissenting, and POTTER, J., not voting.

Judgment reversed.