· BUSH CO., Limited, v. GIBBONS et al.

(Supreme Court, Appellate Division, Second Department. November 13, 1903.)

1. PARTNERSHIP—SURVIVING MEMBER—CLAIMS OF CREDITORS—PRIORITY—EVIDENCE.

Evidence in an action in which the question of priority of the claims of creditors is involved *held* to show that the deceased member of a firm had not, prior to his death, conveyed his interest to the surviving member.

2. SAME—ASSIGNMENT OF JUDGMENT—VALIDITY

A firm having commenced an action on contract, one member died, devising his interest to the other, who prosecuted the action to judgment as surviving member of the firm. *Held*, that assignments of this judgment for the payment of debts of the firm and debts of the surviving member, contracted for the sole purpose of closing up the business of the firm, were valid, as against the claims of his individual creditors, notwithstanding the pendency, at the time of the assignments, of proceedings against him supplementary to execution, and also of bankruptcy proceedings.

Appeal from Special Term, Kings County.

Action by the Bush Company, Limited, against Richard Gibbons and others, in the nature of a bill of interpleader. From a judgment

in favor of defendant National City Bank and others, defendants Audley Clarke and others appeal.    Affirmed.

Argued    before    GOODRICH,    P.    J.,    and    WOODWARD. HIRSCHBERG, JENKS, and HOOKER, JJ.

Robert H. Roy, for appellant Audley Clarke.

Charles H. Young (John A. Thompson, on the brief), for appellant Arthur T. Stoutenburgh.

James P. Judge, for appellants Morrison and Costello.

George W. McKenzie, for appellants Gibbons and Kenney.

Wellesley W. Gage, for appellant Delavan.

David F. Manning, for respondent National City Bank of Brooklyn.

William J. Carr, for respondent Sprague Nat. Bank.

William N. Dykman, for respondent Mechanics' Bank.

Edwin L. Kalish (William F. Goldbeck, on the brief), for respondents Drummond.

De B. Wilmot, for respondent Keenan.

F. E. Dana, for respondent Jesse Johnson.

Theodore B. Gates, for respondent Bell.

WOODWARD, J.   In 1895 the plaintiff in this action entered into two contracts with M. Gibbons & Son by which the latter undertook to construct two warehouses for the former at an aggregate cost of $151,000.   The firm of M. Gibbons & Son originally consisted of Michael Gibbons and Richard Gibbons, his son, one of the defendants in this action.   The buildings were completed about July 2, 1896, and shortly thereafter Michael Gibbons and Richard Gibbons began an action against the plaintiff in this action to recover the sum of $56,000, the unpaid balance of the contract price for the erection of said buildings.   The original complaint claimed a considerable sum for extra work, but this was dropped upon the trial, and the litigation, after passing successively through the Appellate Division and the Court of Appeals, resulted in a judgment or judgments against the plaintiff aggregating at the time of the commencement of this action, with interest, $79,640.78.   Several claimants appearing and demanding this money under assignments or otherwise, the plaintiff brought this action, in the nature of a bill of interpleader, and has been permitted by the court to deposit the amount to the credit of the action, and has been dismissed from further liability.   All of the parties acquiesce in this, and the only questions raised by the appeal are in relation to the rights and priorities of the various claimants, the fund not being sufficient to meet all demands.

On the 25th of August, 1896, shortly after the commencement of the action by Michael Gibbons and Richard Gibbons against the plaintiff in this action, Michael Gibbons died.   The complaint in that action alleged that they were copartners doing business under the firm name of M. Gibbons & Son, and after the death of the father the action was continued in the name of Richard Gibbons as surviving member of the firm of M. Gibbons & Son, the judgment being entered in that name and under that designation, and it continued in that form during all of the subsequent history of the case.   Michael Gibbons left a last

will and testament, under date of August 14, 1896, which was duly
admitted to probate in October of that year. The will appointed
Richard Gibbons as executor, who qualified and entered upon the dis-
charge of his duties. The will, among other things, contained the
following clause, upon which several of the claimants rest their de-
mand for a reversal of the judgment. It reads as follows:

"Having heretofore conveyed to my son Richard Gibbons all of my interest
in the business of M. Gibbons & Son, I hereby ratify and confirm such con-
veyance and bequeath to my said son Richard Gibbons any interest which
it may appear that I may have at the time of my decease in the said business
of the firm of M. Gibbons & Son."

It appears from the evidence that the firm of M. Gibbons & Son
had at the time of the death of Michael Gibbons a large number of
contracts for buildings, which were being performed, and that the
firm had already borrowed of various concerns considerable sums of
money. Richard Gibbons, acting in the capacity of surviving mem-
ber of the firm, and as it was his duty, no doubt, as executor of the
estate, in protecting its assets, borrowed other sums of money for
the purposes of paying the debts of the firm, and completing the con-
tracts which had been entered into in the lifetime of Michael Gibbons;
and the principal question to be determined upon this appeal is wheth-
er the creditors of the firm, and of Richard Gibbons as surviving mem-
ber of the firm, have a right to be reimbursed out of the fund which
has been paid into court under the judgments in the action of Richard
Gibbons as surviving member of the firm of M. Gibbons & Son, or
whether the judgment creditors of Richard Gibbons, individually, or
his subsequent bankruptcy creditors, are entitled to this fund, or to
priority over such firm creditors. The learned court at Special Term
has held, upon what we conceive to be the preponderating evidence
of the case, that the fund in court belonged to Richard Gibbons as
surviving member of the firm of M. Gibbons & Son, and that it was
subject to the liens created by the several assignments made by the
said Richard Gibbons of portions of the judgment recovered in the
action against the plaintiff. The mere recital in the will of the late
Michael Gibbons that he had heretofore conveyed his interest in the
firm to his son could not be controlling, as against the testimony of
the son, in harmony with his action, that he had made use of the
credit and assets of the firm in completing the work which had been
contracted for during the lifetime of his father, and in discharging the
indebtedness of the firm. The verified complaint in the original ac-
tion, commenced within a few weeks of Michael Gibbons' death, says
that they were copartners; the action was continued in the name of
Richard as surviving member of the firm; and, if there was a transfer
after the verification of the complaint and before the death of Michael
Gibbons, it must have been subject to the equities of the creditors,
whose rights could only be protected by the completion of the con-
tracts then under way, and for which moneys had been advanced. In
other words, any transfer of the partnership property to Richard Gib-
bons was subject to the debts of the partnership, and until the con-
tracts then in existence had been completed, and the indebtedness of
the firm settled, the rights and equities of the firm creditors were

superior to those of the individual creditors of Richard Gibbons. While it is probably true that if Richard Gibbons had continued the action in the manner that he did, and had recovered this judgment, a court of equity would not permit him to keep it as against his individual creditors; but, where there are equities superior to those of the individual creditors, it is proper that the fund should be first used to pay the debts which were of the firm's creation, and which extended, equitably at least, to the debts which were necessarily created in making available the funds which had already been tied up in the works being carried forward under the original contracts of the firm. In Durant v. Pierson, 124 N. Y. 444, 454, 26 N. E. 1095, 12 L. R. A. 146, 21 Am. St. Rep. 686, the court reviews the authorities upon the point here involved, and says:

"It appears to us that the conclusion is warranted from the authorities referred to that where a person in good faith loans money to a surviving partner, and where the money is faithfully applied by such partner in satisfaction of the liabilities of the firm, the claim becomes one which in equity should be paid out of the assets of the firm; and, in an accounting between the survivor with the personal representative of the deceased partner, equity will recognize the right of the surviving partner to have the money so borrowed and applied by him repaid out of the assets of the firm, and an assignment so directing is not fraudulent."

This is the principle which underlies the action of the learned court at Special Term, and in the Durant Case, supra, it was held that the fact that the deceased partner left a will making the survivor his sole devisee and legatee did not affect the question of the equities of the bank which had loaned the money.  See Bell v. Hepworth, 134 N. Y. 442, 449, 31 N. E. 918.

It does not appear necessary to review each of the several assignments involved in this appeal, for, while there are variations in the facts, and some intervening transactions, they will all be found to respond to the principle laid down in the Durant Case, supra, and which accords with our own ideas of the equities here involved.  During the lifetime of Michael Gibbons, and about the 8th of June, 1896, the firm of M. Gibbons & Son opened an account with the defendant the National City Bank, and immediately began to borrow money from the said bank through the discounting either of the firm paper, or that of persons indorsed by the firm.  On the 25th day of August, the date of the death of Michael Gibbons, the firm of M. Gibbons & Son was indebted to the bank for a considerable sum of money; and this was increased between the date of the death of Michael Gibbons and the 10th day of July, 1899, at which time Richard Gibbons, as surviving member of the firm of M. Gibbons & Son, made, executed, and delivered to the bank an assignment of an interest in the judgment against the plaintiff to the amount of $37,197.  The indebtedness which this assignment was intended to discharge was, by the undisputed evidence, shown to be such as had been contracted during the lifetime of Michael Gibbons, and such as was made necessary in completing the outstanding contracts, and making the assets of the firm available.  These facts are found by the court, and they are not disputed.  On the 20th day of April, 1900, an instrument confirming the previous assignment, and assigning the cause of action repre-

sented by the said judgment, was also executed and delivered to the said bank.

Nearly one year after the first assignment to the National City Bank, in July, 1899, and on the 4th day of May, 1900, William Keenan, one of the defendants in this action, recovered a judgment against Richard Gibbons individually; and on the 25th day of May, 1900, in proceedings supplementary to execution, the defendant Daniel E. Delavan was appointed receiver of the property and assets of the defendant Richard Gibbons, individually. November 14, 1900, the receivership was extended to the judgment of the appellant Audley Clarke, who urges upon this appeal that the property of the firm of M. Gibbons & Son was vested absolutely in Richard Gibbons, and that the assignments of the several interests in the judgment which he had secured as the surviving member of the firm while under the injunction of the order in supplementary proceedings were void. A similar contention is made on the part of the defendant Arthur T. Stoutenburgh, who has been elected a trustee in bankruptcy under proceedings instituted by petition on the 17th day of June, 1900, against Richard Gibbons, personally.

It seems to us entirely clear that the judgment against the plaintiff never became the property of Richard Gibbons, except as to what might remain after the discharge of the equitable claims of the creditors of the firm of M. Gibbons & Son, and that Richard Gibbons, as surviving member of the firm, was never under any restraint in the proceeding supplementary to execution, nor in the bankruptcy proceeding, both of these proceedings being directed against him personally, and it appears that the fund now in court is not sufficient to meet all of the claims against the firm of which he was the surviving member. It is equally obvious, if the fund belonged to him in his capacity as surviving member of the firm, that he had an equitable right to make an assignment of a sufficient amount to meet the obligations of the firm, either to the National City Bank or any other creditor, legal or equitable, of M. Gibbons & Son. In fact, the entire question here presented is whether the fund now in court belongs to Richard Gibbons, as surviving member of the firm of M. Gibbons & Son? If it does, then there can be no doubt as to the correctness of the distribution which has been directed. The survivor of a partnership does not take the assets as a trustee. He holds the legal title, subject to such equitable rights as the representatives may have to the due application of the assets to the payment of partnership debts; and, until these are discharged, no one other than the creditors can have any right to the property. Williams v. Whedon, 109 N. Y. 333, 338, 16 N. E. 365, 4 Am. St. Rep. 460. "It is well settled, by authority," say the court in the last-cited case, "that partners may lawfully make general assignment of their partnership property for the payment of firm debts, and may in such assignment make such preferences as they deem just and proper; and we can see no reason why the death of one of the firm should deprive the survivor, upon whom is devolved the exclusive management of the firm assets, of the right to make a similar disposition of the assets." See Russell v. McCall, 141 N. Y. 437, 447, 36 N. E. 498, 38 Am. St. Rep. 807,

and authorities there cited; Dodge v. McKechnie, 156 N. Y. 514, 520, 51 N. E. 268, and authorities there cited. In the Williams Case, supra, it was said, "If the assets in such case are insufficient to pay the firm debts in full, it is just and proper for the survivors to distribute them in accordance with the principles of justice and equity, and pay one creditor in preference to another, if they deem that equitable;" and that is exactly what has been done in the present case. The survivor has made assignments of interests in the fund now in the hands of the court to pay the debts owed by the firm of M. Gibbons & Son, or which have been contracted by the survivor in completing the contracts of that firm, in order that he might make the funds of the firm available for the discharge of its obligations, and the fact that there is not enough to pay all of the creditors does not operate to vitiate the assignments which have been made in the payment of the firm debts. All of the claims which are provided for in the judgment, and which exhaust the fund available for their payment, grow out of claims against the firm of M. Gibbons & Son, or against the individual members of that firm, or the survivor, as such (including legal services necessary to the securing of the fund in suit); and, as Richard Gibbons testified that everything he did after the death of his father was done to wind up the affairs of the old firm, it seems to us that the evidence in support of the proposition that the fund in court belongs to the creditors of the firm is so far conclusive that it ought not to be disturbed on appeal. The learned court at Special Term has, in its decision, given in detail the grounds for the determination in each case, showing the circumstances out of which the assignment grew, and it does not seem necessary to follow them out. The correct principle has been adopted in disposing of the questions involved, and we find no reason for reversing or modifying the judgment in any respect; the exceptions taken having no material bearing upon the questions involved.

The judgment appealed from should be affirmed, without costs. All concur.