OPINION OF THE COURT
John V. Vaughn, J.
In this assignment for the benefit of creditors, the principal and president of the assignor debtor corporation moves for an *335 order directing the assignee to pay and discharge a $20,000 debt owed by the assignor to the National Bank of North America.
From the record before the court, it appears that the assignor had obtained a secured loan from the National Bank of North America with a balance due of approximately $20,000, and that the repayment of this loan had been guaranteed by the assignor’s president, the movant in this proceeding. The financing statement, a copy of which is attached to the assignee’s papers, provided that it covered the assignor corporation’s "equipment wherever located and the additions and accessions thereto and substitutions thereto”. Subsequent to the assignment for the benefit of creditors, the assignee petitioned the court for approval of a contract to sell the assignor’s assets. The pertinent provisions of that contract provide:
"(a) AL offers and Assignee herein agrees to sell to AL all of the assets of the Assignor, Bert Lansman & Son, Inc. including but not limited to all inventory, office furniture, equipment and fixtures for $52,000.00 free and clear of all liens, charges, encumbrances and adverse claims, if any, with all liens, charges, encumbrances and adverse claims to attach to the proceeds thereof but not to the profits of the liquidation sale. Upon approval hereof, the Assignee shall deliver to AL a bill of sale for the aforesaid assets.
"(b) AL shall pay all accrued interest charges or other charges payable to National Bank of North America, the secured party over and above the sum of $20,000. due on said lien.
“(c) The Assignee shall pay the secured party the sum of $20,000, more or less, and as required obtain a complete release of said secured party’s lien.”
In his petition to the court for approval of the contract, the assignee alleged:
"5. That the assets of the Assignor may be encumbered by a perfected security interest in and to all inventory, furniture, equipment and fixtures by the National Bank of North America and the exact amount presently due and owing to said bank is unknown, but is believed to be approximately $20,000.00. While the Assignee has been advised of the existence of the bank’s lien by the principals of the Assignor, a lien search has this far failed to disclose any other perfected liens.
*336 "6. That petitioner has not reviewed the secured documents . of the National Bank of North America or any other alleged lienors.”
The assignee opposes this application and argues that the above contract of sale to Alimart, Inc., merely required the payment to the bank if there was a lien to be satisfied. Since the lien covered only equipment and not the assignor’s inventory, the assignee argues that there was no lien to be satisfied and thus no payment had to be made.
On the other hand, the movant argues that the contractual provision is clear in its requirement that the National Bank be paid, and that the assignee has no authority to unilaterally disregard a lien because he believed that the assets covered by the lien had no substantial value. The movant also suggests that there is a possible conflict of interest in that the attorney for the assignee is also the attorney for the leading creditors and that his motive in denying the lien is to secure a greater return for the other general creditors.
The National Bank of North America, through its attorney, submitted a reply to the assignee’s answering papers. The bank does not claim that it had a lien on the assignor’s inventory. Instead, it now argues that it is a third-party beneficiary of the above contract between Alimart and the assignee and that the assignee is estopped from taking his present position. The bank contends that, inasmuch as it had filed its financing statement, the assignee was charged with knowledge of the extent of the lien. In the petition to the court for the approval of the contract, the bank relied upon the representations that it would be paid, and did not replevin or foreclose on the equipment which it maintains was used by the assignee and Alimart in completing the sale of the inventory. This sale, it argues, created a general fund which could be used to pay the liquidation expenses including the contractual obligation to pay the bank.
The assignee objects to the court’s consideration of the bank’s affidavit upon the ground of untimely service. However, in the event that the court did consider these papers, the assignee argues that he should not be charged with notice of the nature of the bank’s lien merely because it was filed because he had relied upon representation to the contrary by the bank and the movant. The assignee also states that, contrary to the bank’s position, he did not use any of the *337 equipment to carry out the proposed liquidation sale, and that the equipment was either unsubstantial or nonexistent.
None of the parties has cited any authority in support of their position. In deciding this motion the court will exercise its discretion and consider all of the papers now before it, including those of the National Bank of North America (McMasters v Allcutt, 151 App Div 559; CPLR 2214, subd [c]).
In an assignment for the benefit of creditors, the assignee takes title to the assignor’s property as trustee for all the creditors under the supervision of the court (Matter of Creveling & Son Corp., 259 App Div 351, affd 283 NY 760; M. Mirzoeff, Inc. v Foster & Chadwick Fur Co., 36 Misc 2d 860). An assignee takes his powers from the assignment and has no inherent power to prefer one creditor over another (see Durant v Pierson, 124 NY 444; 6 Am Jur 2d, Assignments for Benefit of Creditors, § 69). In light of the limited security interest held by the bank in this case, the granting of this order would, in effect, award an unwarranted preference to the secured party. The court declines to do so.
Under the law, the court may allow secured creditors only such sums as the court finds due to them above the value of their securities (Debtor and Creditor Law, § 15, subd 8). The preferred method of evaluating the secured property is a sale by the creditor (Debtor and Creditor Law, § 34). Thus, while it is the duty of the assignee to collect all the assets of the estate (Debtor and Creditor Law, § 14) secured property is not part of that estate until the court, upon petition under section 35 of the Debtor and Creditor Law, determines that sale by the creditor is "impractical or would cause undue delay” and orders its sale by the assignee (Debtor and Creditor Law, § 35; Cherno v Bank of Babylon, 54 Misc 2d 277, affd 29 AD2d 767). It is only when the court finds that a creditor sale is impractical or would cause undue delay that it has the power to authorize a sale by the assignee (Matter of Oakdale Woods, 24 Misc 2d 141). In the event a sale by the assignee is authorized the lien of the secured creditor is transferred to the proceeds of the sale (Debtor and Creditor Law, § 35, subd [3]).
In this matter, while not specifically designated as a proceeding under section 35 of the Debtor and Creditor Law, there was an application by the assignee for approval of a contract to sell all of the assignor’s property including that which was subject to the security interest. Indeed, these are the papers referred to by the bank in support of its argument *338 that the assignee should be estopped because the bank had relied upon the representation in those papers that it would be paid in full. However, there can be no estoppel on that basis since the papers before the court indicate that they were based upon a belief that the bank possessed a security interest in the inventory and not merely the equipment, and the bank never advised the court or the assignee to the contrary.
Thus the prior order of the court approving the entry into the proposed contract of sale must be viewed in light of the facts presented to the court and its authority under the law. Accordingly, the bank is entitled to a lien on the proceeds of that sale to the extent of the value of the secured property sold (Debtor and Creditor Law, § 35). There is nothing in the moving or answering papers which indicates the nature or value of this property. Moreover, in examining the records of the court, the court is unable to locate any schedules listing the nature and value of the assignor’s property despite the fact that such schedules and inventory should have been filed within 30 days of the assignment (Debtor and Creditor Law, § 4) or within the time extended by the order of this court on February 21, 1979. Accordingly, the parties are directed to submit the value of the secured property (equipment) within 30 days of this order (Debtor and Creditor Law, § 35, subd 1), or a hearing will be held within 60 days thereafter to establish the value of said property and the extent of the bank’s lien on the proceeds of the sale.
The court is not now called upon to determine the liability, if any, to the bank and movant which the assignee and Alimart, Inc., may have incurred under the contract of sale. An assignee, like any other trustee, may incur personal liability for his acts. (See Johnson v Lasser, 159 Misc 346, mot granted 249 App Div 865; Roozen v Clonin, 13 App Div 190; Standard Audit Co. v Robotham, 62 Misc 466.)